1  CHARLES D. AXELROD (STATE BAR NO. 39507)
   GARY E. KLAUSNER (STATE BAR NO. 69077)
2  H. ALEXANDER FISCH (STATE BAR NO. 223211)
   NEETA MENON (STATE BAR NO. 254736)
3  STUTMAN, TREISTER & GLATT
   PROFESSIONAL CORPORATION
4  1901 Avenue of the Stars
   12th Floor
5  Los Angeles, CA 90067
   Telephone:  (310) 228-5600
6  Telecopy:  (310) 228-5788
7

8  Attorneys for District
   Valley Health System
9

10

11

12            UNITED STATES BANKRUPTCY COURT

13            CENTRAL DISTRICT OF CALIFORNIA

              RIVERSIDE DIVISION

14  In re                              )    Case No. 6:07-bk-18293-PC
                                       )
15  VALLEY HEALTH SYSTEM, a California  )    Chapter 9
    Local Health Care District         )
16                                     )    STATUS CONFERENCE REPORT
                    Debtor,            )
17                                     )    Status Conference:
                                       )
18                                     )    DATE:    December 17, 2009
                                       )    TIME:    2:00 p.m.
19                                     )    PLACE:   3420 Twelfth Street
                                       )             Courtroom 304
20                                     )             Riverside, CA 92501-3819
                                       )
21  _____)

22

23          Valley Health System, a California Local Healthcare District and Debtor in the

24  above-captioned chapter 9 case (the "District"), submits the following Status Conference Report in

25  anticipation of the Status Conference in this matter scheduled for December 17, 2009 at 2:00 p.m.

26          This Status Report will address four principle subject matters:  (1) the status of the

27  Debtor's proposed sale to Physicians for Healthy Hospitals, Inc. ("PHH"); (2) the District's Plan and

28

Disclosure Statement; (3) challenges to the proposed sale transaction; and (4) status of and developments regarding the District's business operations and management.

**A.    DEVELOPMENTS REGARDING THE SALE OF THE DISTRICT'S ASSETS**

As VHS previously reported to this Court, effective July 27, 2009, the District entered into an agreement with PHH pursuant to which the District agreed to negotiate exclusively with PHH for a period of 90 days. Thereafter, the District and PHH worked extensively in conducting due diligence, and negotiating and drafting documents pertaining to a proposed sale transaction.

On September 16, 2009 the District's Board of Directors approved a non-binding Memorandum of Understanding and Term Sheet ("MOU/TS") which provided for a sale of substantially all of the District's assets to PHH. A condition of the sale (and a requirement of state law) is that the sale be approved by a majority of the voters of the District and, accordingly, at the September 16, 2009 Board meeting, the District also approved a resolution setting an election for December 15, 2009. The MOU/TS also provided for an "Alternative Transaction" in the event that the electorate failed to approve the sale of substantially all of the District's assets. Pursuant to the Alternative Transaction, the District would sell Menifee Valley Medical Center ("Menifee") and retain Hemet Valley Medical Center ("Hemet") and continue to operate it.

Following the September 16, 2009 Board meeting, the District and PHH negotiated, drafted, and executed an Asset Sale Agreement (the "ASA"). The District's Board approved the ASA at a public Board meeting which took place on October 6, 2009. The ASA provides the definitive terms and conditions for the transactions which were described in the MOU/TS. In particular, pursuant to the ASA (and, assuming that the electorate approves the sale of substantially all of the District's assets at the December 15, 2009 election) the District will transfer to PHH substantially all of its assets. PHH will thereupon own and operate, among other assets, Hemet and Menifee. The ASA also provides for the Alternative Transaction which will only be implemented in the event that the electorate fails to approve the sale of substantially all the District's assets at the December 15, 2009 election.[1]

---

[1]    As of the preparation of this Status Report, the election results are not yet known, however, the District believes, based upon polling information, that the electorate is likely to approve the sale.

1    In connection with the ASA, PHH has agreed to provide cash and other consideration

2  to the District, which, in PHH's estimation, has a value of approximately $170 million.  The District

3  is required by state law to obtain "fair value" for its assets as determined by an independent

4  appraisal.  The District has obtained such an independent appraisal and the District believes, based

5  thereon, that the consideration which it is receiving from PHH provides the District with fair value.

6  The District is not obligated, by state law or otherwise, to undertake an auction or engage in a

7  competitive bidding process.

8    The consideration which PHH will be providing to the District pursuant to the ASA

9  consists of a combination of cash to the District; cash to the District's bondholders; the assumption

10  and satisfaction of certain pre and post petition liabilities of the District; future payments to the

11  District and to the District's unsecured creditors; payment of premiums for various insurance policies

12  to protect the District and a variety of other benefits.  Attached hereto as Exhibit "A" is a true and

13  correct copy of Section 1.2 of the ASA which sets forth the essential payments, assumptions of

14  liabilities, ongoing and future obligations and other consideration to be provided by PHH to the

15  District in connection with the ASA.

16    Since having entered into the ASA, the District and PHH, and their respective

17  management and professionals have engaged in an extensive process of sharing information and

18  providing due diligence.  In this regard the District has provided PHH with hundreds of documents

19  consisting of thousands of pages.  For example, because PHH is expected to assume a substantial

20  amount of the District's executory contracts, the District and PHH have been reviewing a multitude

21  of executory contracts between the District and various suppliers, vendors, employees, payors

22  (consisting of insurance carriers, health plans, and government agencies), and providers (including

23  hospitals, medical groups, IPAs, and physicians).  Both PHH and the District have invested hundreds

24  of thousands of dollars in the negotiations, documentation, and ongoing due diligence with respect to

25  the ASA.  In addition, as will be discussed below, the District and PHH have also spent enormous

26  sums of money confronting the various challenges that had been asserted by Prime Healthcare

27  Services, Inc. and various of its collaborators (collectively "Prime") who have attempted, in different

28

1  venues and through different court actions, to enjoin the election and ultimately prevent the ASA

2  from being implemented.

3          Pursuant to Section 6.8 of the ASA, no later than December 4, 2009, PHH was

4  required to provide the District, though its general counsel John B. Marshall, evidence concerning

5  PHH's financing – both with respect to its efforts to raise capital from its investors, and also with

6  respect to obtaining financing from an outside lender.  On December 4, 2009 John Marshall met with

7  representatives of PHH.  At the Status Conference the District will report on the meeting between

8  Mr. Marshall and PHH.

9          As of this date, the District is satisfied that PHH has made reasonable progress in

10  connection with obtaining financing and completing due diligence.  The District also understands

11  that PHH has developed a business plan for the operation of Hemet and Menifee and, subject to

12  appropriate confidentiality agreements, PHH has agreed to share its business plan with

13  representatives of the District's bondholders and its unsecured creditors committee.  As of this date,

14  the District has no reason to believe that PHH will not be in a position to proceed with a closing of

15  the sale transaction provided for by the ASA at such time as all closing conditions have been met.

16      **B.    PLAN OF ADJUSTMENT AND DISCLOSURE STATEMENT**

17          On November 2, 2009 the District filed its Plan For The Adjustment Of Debts Of

18  Valley Health System date November 2, 2009 ("Plan of Adjustment") and its Disclosure Statement

19  With Respect To The Plan For The Adjustment Of Debts Of Valley Health System dated

20  November 2, 2009 ("Disclosure Statement").  The District's Plan of Adjustment is based entirely on

21  the sale of its assets as provided for in the ASA.  The Plan of Adjustment, as originally filed with

22  this court on November 2, 2009, described two different treatments for the District's creditors,

23  depending upon whether voter approval was obtained for the sale of substantially all of its assets (the

24  "Two Hospital Scenario") or, an alternative treatment ("Alternative Treatment"), in the event that the

25  District were to sell Menifee only and continue to operate Hemet.  In light of the District's

26  expectation that the voters will approve the sale of substantially all of its assets to PHH at the

27  December 15, 2009 election, the District intends to file a first amended plan of adjustment and a first

28

534149v1

4

1  amended disclosure statement which will eliminate all references to the Alternative Transaction and

2  the Alternative Treatment.

3        The hearing to approve the District's Disclosure Statement is scheduled for

4  December 17, 2009. There have been two objections to the Disclosure Statement and the District

5  will be filing responses to those objections.

6        The District intends to file its first amended plan of adjustment and its first amended

7  disclosure statement on December 16, 2009. The amended plan of adjustment and amended

8  disclosure statement will reflect:  (1) the deletion of the Alternative Treatment; (2) modifications to

9  address certain issues raised by the Bondholders pertaining, principally, to their treatment under the

10  Plan of Adjustment; (3) modifications to address, in part, the objections to the Disclosure Statement

11  filed by Prime and the Bondholders; (4) updated information concerning the status of the ASA; and

12  (5) a discussion of the various challenges to the proposed sale transaction and the District's

13  intentions with regard to the resolution of those challenges.

14        Assuming that the Disclosure Statement, as amended, is approved at the

15  December 17, 2009 hearing, or shortly thereafter, the District anticipates that the hearing on

16  confirmation of its first amended plan of adjustment will be scheduled for sometime from late

17  January to early March 2010.

18  **C.    CHALLENGES TO THE PROPOSED SALE**

19        Shortly after the District's Board of Directors approved the ASA and scheduled the

20  election to obtain voter approval, certain parties[2] initiated proceeding relating to the proposed

21  transaction in which they sought either directly to prevent the transaction from taking place or other

22  relief which would have precluded the sale to PHH from closing or the election regarding Measure P

23  from going forward. These challenges included the following:

24

25  [2] The parties involved in bringing various litigation tactics in an effort to derail the ASA sale
26  process are comprised of some, or all, of the following parties: Prime Healthcare Services, Inc., a
   Delaware corporation; Prime Healthcare Management, Inc., a California corporation; Save Hemet
   Valley Hospitals, Inc., a California corporation, Albert L. Lewis, Jr. a taxpayer and resident of the
27  VHS local health care district; John Lloyd, a taxpayer and resident of the VHS local health care
   district; and Edward J. Fazekas, a taxpayer and resident of the VHS local health care district
28  (collectively, referred to herein as "Prime").

1      **1.    The Measure P Action ("Measure P Action").**

2          The Measure P Action was initiated by Albert L. Lewis, Jr., on October 15, 2009,

3      whereby Mr. Lewis brought a lawsuit in the Superior Court against Barbara Dunmore, named as the

4      defendant in the action in light of her alleged role as the duly appointed Registrar of Voters for

5      County of Riverside, State of California, who serves as Riverside County's Chief Electorate Officer.

6      The lawsuit named VHS and William Cherry, M.D., Chairman of Board of Directors of VHS, as the

7      "Real Parties in Interest".   In his complaint, Mr. Lewis generally alleged that the language of

8      Measure P, as adopted by the District's Board of Directors, was false and misleading.

9          The primary claims were that Measure P (a) falsely represented that the sale to PHH

10     was necessary to retain access to access to acute service at HCMG and Menifee by not disclosing

11     that other buyers expressed an interest in purchasing these hospitals, (b) failed to state that PHH

12     would not be required to continue to provide acute and emergency services under certain

13     circumstances, and (c) failed to advise voters that a "No" vote on Measure P would mean the

14     implementation of the Alternative Transaction.

15         Based on these allegations, Mr. Lewis sought (i) declaratory relief declaring Measure

16     P to be false and/or misleading, (ii) injunctive relief requiring the defendant to amend the language

17     of Measure P, and (iii) a temporary restraining order and preliminary injunction restraining and

18     enjoining Ms. Dunmore from placing the current version of Measure P statement on the ballot, the

19     county's website or within any ballot pamphlets to be distributed to the electorate.  Mr. Lewis's

20     request for an Order Shortening time on the hearing and trial was denied by the Superior Court at a

21     hearing held on October 27, 2009, despite that fact that the ballot pamphlet was set to be printed and

22     distributed on October 29, 2009.

23         Currently, there is a case management conference hearing set in this matter for April

24     14, 2010.  However, the District anticipates that the Measure P Action has become moot in light of

25     the fact that the Registrar issued and printed the ballot and the election was in fact held on December

26     15, 2009, and that the transaction should therefore be dismissed or taken off of the Superior Court's

27     calendar for this reason.

28

1    **2.    The Public Records Act Action ("_PRA Action_").**

2    On or about October 27, 2009, Prime filed a "Notification of Intent to File State Court

3    Action Against Debtor for Violation of Public Records Act." On the same day, Prime filed its

4    "Verified Petition for Writ of Mandate; Complaint for Injunctive Relief", alleging that VHS

5    committed postpetition violations of the California Public Records Act contrary to California Code

6    of Civil Procedure §§ 526, 1060. 1085, 1094.5 and California Government Code §§ 6258 and 6259.

7    Prime asserted that the causes of action were not subject to the automatic stay because they related to

8    postpetition acts that occurred on or after September 21, 2009, when Prime submitted Public

9    Records Act requests to VHS.[3] At the hearing held on an expedited basis on November 23, 2009,

10    the Superior Court ordered the District to produce certain reports prepared by the Peira Group to

11    Prime by December 4, 2009. The District then filed a Petition for Writ of Mandate with the

12    California Court of Appeal, seeking to overturn a portion of the Order of the Superior Court. On

13    December 3, 2009, the Appellate Court issued a stay of the Superior Court's ruling and requested

14    additional briefing by Prime. The District has responded to such additional briefing and is awaiting

15    a determination by the Appellate Court. A case management conference is currently scheduled for

16    April 26, 2010.

17    **3.    The CEQA Action ("_CEQA Action_").**

18    As a further effort to challenge and overturn VHS's approval of the ASA, on

19    November 3, 2009, Prime filed a "Notification of Intent to File State Court Action Against Debtor

20    for Violation of the California Environmental Quality Act", in which Prime alleged that VHS

21    committed postpetition violations of the California Environmental Quality Act, California Public

22    Resources Code section 21000 _et seq._ ("_CEQA_") and that it did not require relief from stay to pursue

23    the action. Thereafter, on November 6, 2009, Prime filed a "Verified Petition for Writ of Mandate;

24    Complaint for Declaratory Relief and Injunctive Relief", in which it asserted that VHS's approval of

25    the ASA was "procedurally and substantively illegal" because (a) in the event Public Approval was

26

---

27    [3]    While the District has taken the position that the relief sought in connection with both the
Measure P Action and CEQA Action (as both are hereinafter defined) requires the Bankruptcy
28    Court to grant relief from stay, and that therefore those actions were filed in violation of the
automatic stay, the District has not taken that position with regard to the PRA Action.

1    obtained, it was likely that PHH would develop the agricultural property adjacent to Menifee but it

2    did not obtain the requisite approvals for such development, and/or (b) in the event Public Approval

3    was not obtained, and PHH purchased only Menifee under the Alternative Transaction, it was likely

4    that HVMC would close, thereby causing urban blight in Hemet.  Under either circumstance, Prime

5    has alleged that the proposed sale to PHH constitutes a "project" requiring compliance with the

6    California Environmental Quality Act, California Public Resources Code section 21000 *et seq.*

7    ("CEQA") and that VHS has failed to comply.

8         On December 3, 2009, the District filed with the Superior Court a Notice of Removal,

9    removing this action to the Bankruptcy Court.  The District disputes the allegations that the sale

10   constitutes a "project" requiring compliance with CEQA and has engaged counsel with expertise in

11   CEQA matters.  The District intends to oppose the CEQA Action on both procedural and substantive

12   grounds.

13        The Bankruptcy Court has scheduled a status conference in the removed CEQA

14   Action for January 19, 2010 at 9:30 a.m.

15        **4.    The Government Code Section 1090 Action ("Section 1090 Action").**

16        On October 13, 2009, Prime filed a motion seeking relief from the automatic stay to

17   pursue an action against the District (the "Section 1090 Stay Relief Motion"), the purpose of which

18   was to seek orders nullifying or invalidating the ASA and thereby preventing the District from

19   proceeding with the ASA and enjoining the election.[4]  Specifically, the Section 1090 Stay Relief

20   Motion was based on allegations that, among other things: (i) the VHS Board of Directors illegally

21   approved a rush sale of its assets to PHH, without adequately acknowledging the interest of other

22   potential purchasers; (ii) certain conflicts of interest exist relating to the approval of the ASA

23   because certain of the members of the VHS Board of Directors are financially interested as they are

24   employed by, or derive financial benefits from, Dr. Kali Chaudhuri, who is one of the principals of

25   PHH, in violation of California Government Code Section 1090, which prohibits any board member

26

27   [4]    Prime did not attach a copy of its proposed complaint to its moving papers, however, a copy of
the complaint was filed in a supplemental pleading shortly before the hearing (the "Section 1090
28   Action").

534149v1                                        8

1  from being "financially interested in any contract made by them in their official capacity, or by any

2  body or board of which they are members"; and (iii) VHS failed to apply to the proper local

3  government authorities for approval of its decision to exit the hospital business, in violation of the

4  Cortese-Knox-Hertzberg Local Government Reorganization Action of 2000, which requires VHS to

5  apply to the Riverside Local Area Formation Commission for approval of the sale of substantially all

6  of its assets.  The Section 1090 Stay Relief Motion was heard by the Bankruptcy Court on November

7  12, 2009, and was denied in its entirety, without prejudice, by order dated November 23, 2009 (the

8  "Section 1090 Stay Relief Order").  Accordingly, the Section 1090 Action was not filed in the

9  Superior Court.

10          **5.      Current Status of CEQA Action and Section 1090 Action Litigation.**

11          On or about November 20, 2009 Prime filed a "Renewed Motion for Relief from

12  Stay" (the "Renewed Stay Motion"), in which it once again requested that the Bankruptcy Court (i)

13  allow it to file the Section 1090 Action and (ii) annul the automatic stay and permit Prime to proceed

14  with the previously filed CEQA Action.  Concurrent with the filing of its Renewed Stay Motion,

15  Prime requested that the Bankruptcy Court shorten time to expedite the hearing on the motion, which

16  application the Bankruptcy Court denied by order dated November 30, 2009.  As of this date, no

17  hearing has been set on the "Renewed" Stay Motion.

18          On December 3, 2009, the District, acting pursuant to 28 U.S.C. Section 1452,

19  exercised its right to remove the CEQA action to the Bankruptcy Court.

20          On December 7, 2009, Prime filed its "Notice of Appeal" of the 1090 Stay Relief

21  Order and elected to have the District Court hear the appeal of the order.

22          **6.      Resolution of Pending "Challenge Actions" At Confirmation.**

23          As matters now stand:  (1) the CEQA Action is pending in the Bankruptcy Court;

24  (2) the Measure P Action is pending in the Superior Court; (3) the PRA Action is pending in the

25  Superior Court; and (4) the Section 1090 Action, has not been filed.  All of said actions are

26  collectively, hereinafter referred to as the "Challenge Actions".

27

28

534149v1

1    The District has concluded that a resolution of all of the various issues that have been

2  raised in the Challenge Actions is critical to both the confirmation and the implementation of its first

3  amended plan of adjustment.

4    Accordingly, the District intends to present evidence in connection with the

5  confirmation hearing which will address all of the issues that have been raised in the Challenge

6  Actions and will request that the Bankruptcy Court make findings of fact and conclusions of law and

7  adjudicate all of the issues pertaining to the Challenge Actions as part of the confirmation process.  It

8  is the District's position that the Bankruptcy Court's adjudication of the issues raised in connection

9  with the Challenge Actions will resolve all of those issues such that any pending or threatened

10 actions relating to the subject matter thereof will be subject to dismissal or judgment in favor of the

11 District based on applications of the principles of collateral estoppel and *res judicata*.

12 **D.    STATUS OF DISTRICT'S BUSINESS OPERATION AND
        MANAGEMENT**

13

14    Subsequent to the last Status Conference which took place on September 29, 2009,

15 the District's interim Chief Financial Officer, Michael Burnstein, announced his resignation.  His job

16 was filled, on a temporary basis by Melanie Van Winkle, however, Miss Winkle has also announced

17 that she is departing the District, effective December 15, 2009.  The District has recently retained

18 Kathleen Cain as the interim CFO.

19    Attached hereto as Exhibit "B" is a copy of the District's financial statements for the

20 four months ended October 31, 2009.  As of the end of October, the District had cash on hand of

21 approximately $7.2 million.  Although that represents a reduction from its cash on hand as of the end

22 of the prior month, that decrease is primarily due to an increase in accounts payable disbursements

23 which took place in October due to five check runs processed during the month (representing an

24 increase of $2.5 million from September to October).  In addition, delays in collections from

25 Medicare and Medi-cal impacted the October collections by approximately $1.2 million.  Further,

26 the District has incurred greater than anticipated professional fees relating to the ASA, and in

27 particular, fees incurred in opposing the multi-faceted challenges to the ASA initiated by Prime.  The

28 District has been forced to litigate numerous matters in the state court as well as in the bankruptcy

534149v1

1   court in order to fend off Prime Healthcare's various lawsuits and motions so as to avoid any

2   interference with the election and sale.

3            The District's restructuring fees for October 2009 were approximately $700,000. A

4   major component of these fees were related to the time incurred in confronting Prime's challenge.

5

6   Dated: December 14, 2009           Respectfully submitted,

7

8                           STUTMAN, TREISTER & GLATT
                          GARY E. KLAUSNER

9                           H. ALEXANDER FISCH

10

11                           By: /s/ Neeta Menon
                              Attorneys for District

12                               VALLEY HEALTH SYSTEM

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

534149v1

# EXHIBIT A



# ASSET SALE AGREEMENT

### BY AND BETWEEN

### VALLEY HEALTH SYSTEM,
a California Local Health Care District

"Seller"

### AND

### PHYSICIANS FOR HEALTHY HOSPITALS, INC.,
a Delaware corporation

"Purchaser"

### DATED: October 14, 2009

(c)    References to any agreement, document or instrument are references to that document as amended, consolidated, supplemented or replaced by the parties thereto from time to time;

(d)    References to time are references to Pacific time (Standard or Daylight Savings, as applicable);

(e)    References to "Parties" are references to Seller and Purchaser and their successors and assigns and such Parties are sometimes referred to individually as a Party;

(f)    The gender of all words includes the masculine, feminine and neuter, and the number of all words includes the singular and plural; and

(g)    To the extent included in this Agreement, the Table of Contents, the divisions of this Agreement into Articles, Sections and subsections and the use of captions and headings in connection therewith are solely for convenience and shall have no legal effect in construing the provisions of this Agreement.

### 1.2    Purchase Consideration.

### 1.2.1    Purchaser's Estimate of Purchase Consideration.

(a)    The aggregate purchase consideration to be paid and provided by Purchaser to Seller shall consist of the following payments and assumptions of liabilities, the aggregate value of which Purchaser estimates to be approximately One Hundred Sixty-Nine Seven Hundred Seventy Three Million Dollars ($169,773,000) (**"Purchaser's Estimate of Purchase Consideration"** or **"PEPC"**):

(i)    <u>Cash Purchase Portion</u>. Payment of an amount sufficient to pay off the Existing Bonds described in <u>Schedule 1.2.1(b)</u>, after application of all reserves held by the Bond Trustee in connection with the Existing Bonds and any reserves held internally by Seller for payment of interest and principal on the Existing Bonds. It is the intent of the parties that Purchaser shall pay Seller an amount necessary to pay off the Existing Bonds and to obtain the Bond Releases. As of the date of this Agreement, the outstanding principal and unpaid interest on the Existing Bonds is currently estimated at approximately $44,700,000 less reserves, which are anticipated to be reduced by withdrawals by the Bond Trustee to cover its fees and expenses as incurred (the **"Cash Purchase Portion"**); and

(ii)    <u>Select Note Satisfaction</u>. The satisfaction or assumption by Purchaser of, and the full and complete release of Seller from any further liability under, the Select Administrative Note, with a current approximate balance, including accrued interest, of $8,400,000 (**"Select Note Satisfaction"**); and

(iii)    <u>Assumed Other Liabilities</u>. Assumption by Purchaser, for the benefit of Seller, of (A) Adjusted Current Liabilities, (B) other liabilities on the Baseline Financials classified under long term debt as *Capitalized Leases and Other L/T Debt* and (C) other liabilities on the Baseline Financials classified as *Workers' Comp -Long Term*, (Section 1.2.1(a)(iii)(B) and Section 1.2.1(a)(iii)(C) are collectively referred to as **"Other Liabilities"**), all of which, based on the Baseline Financials, collectively result in an assumed liability of

approximately $31,100,000 (collectively, the **"Assumed Other Liabilities"**).  In connection with the assumption of the Assumed Other Liabilities, Purchaser also is agreeing to indemnify, defend and hold Seller harmless with respect to the Assumed Other Liabilities; and

      (iv)    <u>Creditors Commitment</u>.  A commitment by Purchaser in the total amount of $21,000,000 (which amount shall not be subject to offset by Purchaser for any reason whatsoever), subject to payment of up to $4,000,000 or more to pay Seller's Administrative Claims as detailed in Section 1.2.4, with the remainder to be paid to the General Unsecured Creditors not included in Assumed Other Liabilities, over (4) years in four (4) equal annual payments on each successive anniversary of the Closing(**"Creditors Commitment"**); and

      (v)    <u>Assumed Rejection Claims</u>.  The satisfaction or assumption by Purchaser of, and the full and complete release of Seller from any liability under, the rejection and/or breach claims filed by KM Strategic Management, Inc. (**"KM"**), Hemet Community Medical Group (**"HCMG"**), Menifee Valley Community Medical Group (**"MVCMG"**), LHIO, LLC (**"LHIO"**), and any claims of constituent members thereof which are derivative from such rejection and/or breach claims by KM, HCMG, MVCMG or LHIO, which Purchaser contends constitutes an assumption and release of claims worth approximately $55,000,000 (**"Assumed Rejection Claims"**) as detailed more fully in claim numbers 134, 135, 136, and 168 and any amendments thereto, and indemnifying, defending and holding Seller harmless with respect to the Assumed Rejection Claims; and

      (vi)    <u>Assumed Contracts</u>.  The satisfaction or assumption and release, if such release can be obtained, or indemnification of Seller by Purchaser, of the Assumed Contracts, as defined in Section 1.6.6; and

      (vii)    <u>D&O Tail Payment</u>.  Payment by Purchaser, on Seller's behalf, of the premium for Seller's directors and officers tail insurance (**"D&O"**) under substantially the same coverage, terms and conditions and policy limits as exists prior to the Closing Date, but without deductibles, as customarily modified from claims made to tail coverage in a single premium amount estimated at Four Hundred Fifty Thousand Dollars ($450,000) (**"D&O Tail Payment"**), as provided in Section 4.13(b); and

      (viii)    <u>E&O Tail Insurance Payment</u>.  Payment by Purchaser, on Seller's behalf, of the premium for general liability and medical malpractice tail insurance (**"E&O"**) under substantially the same coverage, terms and conditions and policy limits as exists prior to the Closing Date, but without deductibles, as customarily modified from claims made to tail coverage in a single premium amount estimated at Three Million Seven Hundred Fifty Thousand Dollars ($3,750,000) (**"E&O Tail Insurance Payment"**) as provided in Section 4.13(a);

      (ix)    <u>Annual Support Grants (Community Benefit)</u>.  Payment by Purchaser of the Annual Support Grants (as provided in Section 5.9.1(b) of this Agreement) of up to $400,000 per year for five (5) years (total up to $2,000,000), which amount shall not be subject to offset by Purchaser for any reason whatsoever; and

EXHIBIT A

(x)    ESL Benefits. Assumption by Purchaser of the accrued ESL Benefits to Seller's Employees pursuant to Section 1.8.11, estimated at a maximum of approximately $3,373,000.

(b)    If the Transaction does not become the Alternative Transaction and the Agreement is not terminated as provided in Article VIII, the Purchaser shall cause the Escrow to deliver to the Bond Trustees, at Closing, Purchaser's payment of the Cash Purchase Portion on Seller's behalf for all of the existing bond indebtedness to which Seller is subject, or which is secured by or otherwise affects any of the Assets, as further described in Schedule 1.2.1(b) (the "**Existing Bonds**") as needed to obtain the Bond Release; or

(c)    If the Transaction under this Agreement becomes the Alternative Transaction, as detailed in Section 1.3.2 of this Agreement, whereby Purchaser purchases Menifee Valley Medical Center, then the Parties shall execute a separate asset purchase agreement which shall contain those terms set forth in Schedule 1.3.2 (the "**Definitive Alternative Agreement**"); provided, however, if the Parties are unable to reach agreement on the Definitive Alternative Agreement, the terms of this Agreement, including without limitation, Schedule 1.3.2 shall remain legally binding and enforceable on the Parties with respect to the Alternative Transaction addressed in Section 1.3.2.

**1.2.2    Opening of Escrow.**  Within five (5) business days after the execution of this Agreement, the Parties shall open an escrow with the Bank of Hemet (the "**Escrow**").  The Parties shall also execute and deliver to Escrow mutually acceptable escrow instructions as the Parties determine are necessary in order to consummate such transactions and as the Title Company and the Escrow shall require in order to clarify their respective duties and responsibilities (the "**Escrow Instructions**") along with a duly executed copy of this Agreement.

**1.2.3    Deposit.**  Within five (5) business days after the opening of Escrow, (i) the Parties shall effect the transfer to the applicable escrow account at Escrow the One Million Dollars ($1,000,000) previously deposited by Purchaser in connection with the exclusive dealing agreement between Seller and Purchaser, and (ii) Purchaser shall wire transfer to Escrow an additional One Million Dollars ($1,000,000), in immediately available funds, which shall collectively constitute the good faith deposit in the amount of Two Million Dollars ($2,000,000) (the "**Deposit**"), all of which shall, in the event of Closing, be credited as part of the PEPC in connection with the transactions contemplated by this Agreement and the Related Agreements (collectively, the "**Transaction**"). The Escrow shall hold the Deposit pursuant to the terms of mutually acceptable Escrow Instructions in substantially the form attached as Exhibit 1.2.3 which Seller, Purchaser and the Title Company shall execute as soon as possible after the execution of this Agreement. The Escrow Instructions shall be consistent with the terms of this Agreement, and in the event of any conflict between the Escrow Instructions and this Agreement, this Agreement shall prevail. The Deposit shall be repaid to Purchaser or retained by Seller as provided in Article VIII.

**1.2.4    Administrative Claims Fund.**

**1.2.4.1    Claims Fund.**  Concurrent with the Closing, Purchaser shall have deposited $4,000,000 into a segregated interest bearing trust account to be maintained by Seller separate and apart from any other bank accounts, to be used only for the purposes and for the benefit of the parties described in this Section 1.2.4 (the "**Claims Fund**") and to make funds available to

# EXHIBIT B

**VALLEY HEALTH SYSTEM**

**FINANCIAL STATEMENTS**
**FOR**
**FOUR MONTHS ENDED OCTOBER 31, 2009**

**VALLEY HEALTH SYSTEM**
**FISCAL YEAR 2010 - AS OF OCTOBER 31, 2009**
**CONSOLIDATED OPERATING FUND BALANCE SHEET**

| | 10/31/2009 | 9/30/2009 | Change from prior month | 6/30/2009 |
|---|---|---|---|---|
| **ASSETS** | | | | |
| **CURRENT** | | | | |
| Cash and Short Term Investment | $ 7,235,061 | $ 8,432,988 | $ (1,197,927) | $ 12,366,702 |
| Short Term Investment: Restricted | 1,294,419 | 1,293,091 | 1,328 | 1,289,568 |
| Patient Receivables | 81,188,556 | 76,088,131 | 5,100,425 | 74,027,038 |
| Less Retention & Allowances | (54,358,727) | (49,119,719) | (5,239,008) | (50,039,475) |
| Net Patient Receivables | 26,829,829 | 26,968,412 | (138,583) | 23,987,563 |
| Other Receivables | 367,725 | 323,222 | 44,503 | 570,608 |
| Inventories | 1,924,462 | 1,869,158 | 55,304 | 1,923,690 |
| Prepaid Expenses & Deposits | 1,467,433 | 1,998,566 | (531,133) | 2,009,761 |
| **TOTAL CURRENT ASSETS** | 39,118,929 | 40,885,437 | (1,766,508) | 42,147,892 |
| | | | | |
| **ASSETS LIMITED TO USE** | | | | |
| Under Indenture agreement - Held by Trustee | 2,154,144 | 2,157,989 | (3,845) | 2,447,071 |
| | | | | |
| **PROPERTY, PLANT & EQUIPMENT** | | | | |
| Land | 7,346,113 | 7,346,113 | 0 | 7,346,113 |
| Land Improvements | 3,239,908 | 3,239,908 | 0 | 3,239,908 |
| Building & Improvements | 78,424,612 | 78,424,612 | 0 | 78,424,612 |
| Equipment | 87,733,995 | 87,518,592 | 215,403 | 86,765,168 |
| **TOTAL** | 176,744,628 | 176,529,225 | 215,403 | 175,775,801 |
| Less Accumulated Depreciation | (126,641,679) | (126,144,399) | (497,280) | (124,652,349) |
| **NET PP&E** | 50,102,949 | 50,384,826 | (281,877) | 51,123,452 |
| Construction In Progress | 4,456,611 | 4,455,954 | 657 | 4,263,749 |
| **TOTAL PROPERTY PLANT & EQUIPMENT** | 54,559,560 | 54,840,780 | (281,220) | 55,387,201 |
| | | | | |
| Note Receivable | 4,200,000 | 4,200,000 | 0 | 4,200,000 |
| Other Assets | 909,291 | 912,221 | (2,930) | 921,008 |
| **TOTAL OTHER ASSETS** | 5,109,291 | 5,112,221 | (2,930) | 5,121,008 |
| | | | | |
| **TOTAL ASSETS** | $ 100,941,924 | $ 102,996,427 | $ (2,054,503) | $ 105,103,172 |

The Financial Information presented includes the Consolidation of Valley Health System Service Corporation

1

## VALLEY HEALTH SYSTEM
### FISCAL YEAR 2010 - AS OF OCTOBER 31, 2009
### CONSOLIDATED OPERATING FUND BALANCE SHEET

| | 10/31/2009 | 9/30/2009 | Change from prior month | 6/30/2009 |
|---|---|---|---|---|
| **LIABILITIES AND FUND BALANCE** | | | | |
| | | | | |
| **CURRENT** | | | | |
| Accounts Payable | $ 9,997,392 | $ 10,656,771 | $ (659,379) | $ 12,141,162 |
| Accrued Payroll | 5,458,723 | 4,761,339 | 697,384 | 5,959,650 |
| Pre-Petition Liabilities | 22,197,351 | 22,207,451 | (10,100) | 22,557,005 |
| Other Current Liabilities | 2,181,169 | 1,962,834 | 218,335 | 1,255,068 |
| Payable to 3rd Party Payors | 4,960,767 | 5,537,510 | (576,743) | 5,014,736 |
| Current Maturities of Long Term Debt: | | | | |
| Capitalized Leases | 1,844,886 | 1,844,886 | 0 | 1,844,886 |
| Notes Payable | 0 | 0 | 0 | 0 |
| 1993 Bonds | 1,635,000 | 1,635,000 | 0 | 1,635,000 |
| 1996 Bonds | 170,000 | 170,000 | 0 | 170,000 |
| **TOTAL CURRENT LIABILITIES** | 48,445,288 | 48,775,791 | (330,503) | 50,577,507 |
| | | | | |
| Workers' Comp - Long Term | 6,957,628 | 6,869,203 | 88,425 | 6,576,443 |
| Malpractice Liability - Long Term | 3,001,971 | 3,001,971 | 0 | 3,001,971 |
| | | | | |
| **LONG TERM DEBT** | | | | |
| Capitalized Leases and Other L/T Debt | 1,472,499 | 1,470,062 | 2,437 | 1,288,773 |
| Select Note | 7,968,500 | 7,968,500 | 0 | 7,968,500 |
| Bonds Payable 1993 | 38,274,588 | 38,270,877 | 3,711 | 38,259,743 |
| Bonds Payable 1996 | 4,613,626 | 4,612,846 | 780 | 4,610,506 |
| **TOTAL LONG TERM DEBT** | 52,329,213 | 52,322,285 | 6,928 | 52,127,522 |
| | | | | |
| **TOTAL LIABILITIES** | 110,734,100 | 110,969,250 | (235,150) | 112,283,443 |
| | | | | |
| **FUND BALANCE** | (7,175,567) | (7,176,895) | 1,328 | 487,301 |
| INCOME | (2,616,609) | (795,928) | (1,820,681) | (7,667,572) |
| | | | | |
| **TOTAL LIABILITIES & FUND BALANCE** | $ 100,941,924 | $ 102,996,427 | $ (2,054,503) | $ 105,103,172 |

The Financial Information presented includes the Consolidation of Valley Health System Service Corporation

2

**EXHIBIT B**

20

| In re: Valley Health System | CHAPTER 9 |
|---|---|
| Debtor(s). | CASE NUMBER:  6:07-bk-18293-PC |

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: **Stutman, Treister & Glatt, Professional Corporation, 1901 Avenue of the Stars, 12th Floor, Los Angeles, California 90067-6013**

The foregoing document described **Notice Of Continuance Of Hearing On Motion For An Order: (1) Approving The Adequacy Of The Disclosure Statement Filed By Valley Health System Regarding The Chapter 9 Plan Of Adjustment Dated November 2, 2009 Of Which It Is The Proponent And (2) Establishing Confirmation Procedures** will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner indicated below:

**I.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF") – Pursuant to controlling General** Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On **December 15, 2009**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☒  Service information continued on attached page

**II.  SERVED BY U.S. MAIL (indicate method for each person or entity served):**
On **December 15, 2009**, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. *Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.*

☒  Service information continued on attached page

**III.  SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL (indicate method for each person or entity served):** Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on_____ I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. *Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.*

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| 12/15/2009 | Lisa Masse | *Lisa Masse* |
|---|---|---|
| Date | Type Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*
533501v1

**F 9013-3.1**

| In re: Valley Health System | CHAPTER 9 |
|---|---|
| Debtor(s). | CASE NUMBER:  6:07-bk-18293-PC |

## I.  <u>TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING</u>

Andrew K Alper on behalf of Creditor Key Equipment Finance Inc.
aalper@frandzel.com, efiling@frandzel.com;ekidder@frandzel.com

Terri H Andersen on behalf of U.S. Trustee United States Trustee (RS)
terri.andersen@usdoj.gov

Kathryn M Barnes on behalf of Creditor c/o Kathryn Barnes Valley Medical Staffing, Inc.
kbarnes@thelen.com

Mark Bradshaw on behalf of Creditor Hemet Community Medical Group Inc
mbradshaw@shbllp.com

Michael E Busch on behalf of Creditor BETA Healthcare Group
michael.busch@fnf.com

Traci L Cotton on behalf of Creditor UT System obo UT MD Anderson Cancer Center
tcotton@utsystem.edu

Jennifer Witherell Crastz on behalf of Creditor Beckman Coulter, Inc.
jcrastz@hemar-rousso.com

Melissa Davis on behalf of Creditor KM Strategic Management LLC
mdavis@shbllp.com

Timothy J Farris on behalf of U.S. Trustee United States Trustee (RS)
timothy.j.farris@usdoj.gov

H Alexander Fisch on behalf of Counter-Defendant Valley Health System
afisch@stutman.com

Heather Fowler on behalf of Interested Party Prime Healthcare Services, Inc.
heather.fowler@lw.com, colleen.rico@lw.com

Roger F Friedman on behalf of Creditor Kali Chaudhuri
rfriedman@rutan.com

Mark S Horoupian on behalf of Interested Party Prime Healthcare Management LLC
mhoroupian@sulmeyerlaw.com

Allan H Ickowitz on behalf of Creditor Kaiser Foundation Hospitals
aickowitz@nossaman.com

Jeffrey L Kandel on behalf of Creditor Committee Official Committee of Creditors Holding Unsecured Claims
jkandel@pszjlaw.com

Sheri Kanesaka on behalf of Creditor Catholic Healthcare West
sheri.kanesaka@lw.com, jjacobs@mrllp.com;fbaig@mrllp.com;scasselberry@mrllp.com;fbaig@mrllp.com

Q Scott Kaye on behalf of Creditor U.S. Bank, National Association, as trustee
qskaye@mwe.com

John W Kim on behalf of Creditor Kaiser Foundation Hospitals
jkim@nossaman.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*
533501v1

**F 9013-3.1**

| In re: Valley Health System | CHAPTER 9 |
|---|---|
| Debtor(s). | CASE NUMBER: 6:07-bk-18293-PC |

Stuart I Koenig on behalf of Creditor Blue Cross Of California
Skoenig@cmkllp.com

Jean LeBlanc on behalf of Creditor U.S. Bank, National Association, as trustee
jleblanc@mwe.com

Dana N Levitt on behalf of Creditor U.S. Bank, National Association, as trustee
dlevitt@mwe.com, WSmith@mwe.com

Michael S Lurey on behalf of Creditor Catholic Healthcare West
michael.lurey@lw.com, colleen.rico@lw.com

Samuel R Maizel on behalf of Creditor Committee Official Committee of Creditors Holding Unsecured Claims
smaizel@pszjlaw.com, smaizel@pszjlaw.com

David J Mccarty on behalf of Counter-Claimant Aetna Health Management LLC
dmccarty@sheppardmullin.com, pibsen@sheppardmullin.com

Uzzi O Raanan on behalf of Creditor Siemens Financial Services, Inc.
uor@dgdk.com

Christian L Raisner on behalf of Creditor Local 121 RN
bankruptcycourtnotices@unioncounsel.net, craisner@unioncounsel.net

Christopher O Rivas on behalf of Creditor General Electric Capital Corporation
crivas@reedsmith.com

Stephanie M Seidl on behalf of Counter-Claimant Aetna Health Management LLC
sseidl@sheppardmullin.com

Leonard M Shulman on behalf of Creditor Hemet Community Medical Group Inc
lshulman@shbllp.com

Gerald N Sims on behalf of Creditor BETA Healthcare Group
jerrys@psdslaw.com

Adam M Starr on behalf of Creditor Anaheim Memorial Hospital
starra@gtlaw.com

Jason D Strabo on behalf of Creditor U.S. Bank, National Association, as trustee
jstrabo@mwe.com, briley@mwe.com

Derrick Talerico on behalf of Creditor SCAN Health Plan
dtalerico@loeb.com, kpresson@loeb.com;ljurich@loeb.com

Wayne R Terry on behalf of Creditor BANK OF THE WEST
wterry@hemar-rousso.com

United States Trustee (RS)
ustpregion16.rs.ecf@usdoj.gov

Andrea M Valdez on behalf of Creditor Universal Health Services
avaldez@fulbright.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*
533501v1

F 9013-3.1

| In re: Valley Health System | CHAPTER 9 |
|---|---|
| Debtor(s). | CASE NUMBER: 6:07-bk-18293-PC |

David M Wiseblood on behalf of Creditor c/o Christian L. SEIU-United Healthcare Workers West
dwiseblood@seyfarth.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*
533501v1

F 9013-3.1

| In re: Valley Health System | CHAPTER 9 |
|---|---|
| Debtor(s). | CASE NUMBER: 6:07-bk-18293-PC |

## II. **SERVED BY U.S. MAIL**

VALLEY HEALTH SYSTEM
5965 - Special Notice List
Revised 6/2/09
Doc. No. 483619v3

The Honorable Peter Carroll
USBC - Central District of California
3420 Twelfth Street
Courtroom No. 304
Riverside, CA 92501-3819

Valley Health System
1117 East Devonshire Avenue
Hemet, CA 92543

Attys for the Committee of Unsecured
Creditors
Sam Maizel, Esq.
Jeff Kandel, Esq.
Pachulski, Stang Ziel & Jones LLP
10100 Santa Monica Blvd., Suite 100
Los Angeles, CA 90067

Internal Revenue Service
Insolvency Group 1
290 North "D" Street
San Bernardino, CA 92401

Securities Exchange Commission
5670 Wilshire Blvd., 11th Floor
Los Angeles, CA 90036

Employment Development Dpt.
Bankruptcy Group MIC 92E
P.O. Box 826880
Sacramento, CA 94280-0001

Franchise Tax Board
Attn: Bankruptcy
P.O. Box 2952
Sacramento, CA 95812-2952

Trustee for Bondholders
US Bank/ FAX: 651/495-3775
Attn: Mike Vraa, Trust Officer
60 Livingston Ave.
Mail Code EP-MN-WE3T
St. Paul, MN 55107-2292

United States Trustee
Office of the U.S. Trustee
3685 Main Street, Suite 300
Riverside, CA 92501

Atty for Both: Menifee Valley Community Medical
Group & Hemet Community Medical Group
Joseph M. Galosic, Esq.
26632 Towne Center Dr. #300
Foothill Ranch, CA 92610-2808

Atty/ DePuy Orthopedics, Inc.
David W. Dykhouse
Patterson Bleknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036-6710

Atty: Anaheim Memorial Hospital
Paul R. Glassman
Greenberg Traurig, LLP
2450 Colorado Avenue, Ste. 400E
Santa Monica, CA 90404

DaVita
Michael S Winsten, Esq.
Winsten Law Group
27201 Puerta Real, Ste. 465
Mission Viejo, CA 926917

Renal Treatment Center- California, Inc.
Michael S Winsten, Esq.
Winsten Law Group
27201 Puerta Real, Ste. 465
Mission Viejo, CA 92691

Primeshares
60 Madison Ave., 2d Floor
New York, NY 10011-1600

Atty/Sodexho USA aka Sodexho Marriott Servs.
Poyner & Spruill LLP
Attn: Judy D. Thompson
301 South College St., #2300
Charlotte, NC 28202

Atty/Blue Cross of CA
Creim Macias Koenig & Frey LLP
Attn: Stuart I. Koenig
633 W. Fifth St., 51st Fl.
Los Angeles, CA 90071

Atty/Menifee Valley Community Med. Grp.
William E. Thomas, Esq.
6800 Indiana Avenue, #130
Riverside, CA 92506

Atty/KM Strategic Mgmt.
Davis & Wojcik
Robert A. Davis, Jr.
1105 East Florida Ave.
Hemet, CA 92543

Atty/Southland Endoscopy
Davis & Wojcik
Attn: Joseph M. Wojcik
1105 East Florida Ave.
Hemet, CA 92543

Atty/Hemet Community Med. Group
Shulman Hodges & Bastian LLP
Attn: L.M. Shulman/M. Bradshaw
26632 Towne Center Dr., #300
Foothill Ranch, CA 92610

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1**

| In re: Valley Health System | | CHAPTER 9 |
| --- | --- | --- |
| | Debtor(s). | CASE NUMBER: 6:07-bk-18293-PC |

IBM Credit LLC
Special Handling Group
Attn: Pamela Wilcox
4111 Northside Parkway
Atlanta, GA  30327

Atty/Health Net
Pillsbury Winthrop Shaw Pittman LLP
Attn:  Nadine J. Youssef
725 S. Figueroa St., #2800
Los Angeles, CA 90017

Health Net
Attn:  Patrice Halloway
7755 Center Ave., 8th Fl.
Huntington Beach, CA  92647

Atty/ Siemens Financial Services Inc.
Uzzi O Raanan
Danning Gill et al LLP
2029 Century Park E 3FL
Los Angeles, CA 90067-2904

Attys/ Siemens Financial Services Inc.
Arlene N. Gelman & Stephanie Hor-Chen
Vedder Price P.C.
222 North LaSalle Street
Chicago, IL 60601

Atty/ Valley Medical Staffing Inc.,
Michael B. Conley
3685 Mount Diablo Blvd. #351
Lafayette, CA 94549

Owens & Minor, Inc.
Larry R. Whitley CBF
455 South Brea Canyon Road
City of Industry, CA 91789-3058

Meline Industries, Inc.
Attn: Anne Kisha
One Medline Place
Mundelein, IL 60060

Atty/ Owens & Minor, Inc
Buchalter Nemer P.C.
Benjamin S. Seigel, Esq.
1000 Wilshire Blvd., Ste. 1500
Los Angeles, CA 90017

Atty/ HRC Manor Care Inc.
Fredrick Borges, Glen Stebens, Dale Pomerantz
Beam, Brobeck, West, Borges & Rosa LLP
1301 Dove Street, #700
Newport Beach, CA  92660-2412

Agent for GE Money Bank
Recovery Management Systems Corp.
Attn: Ramesh Singh
25 SE 2nd Ave. Ste 1120
Miami, FL 33131-1605

Atty/ Inland Empire Health Plan
Tin Kin Lee Esq.
Law Offices of Tin Kin Lee
55 S. Lake Ave. Ste 705
Pasadena, CA 91101

Atty/ US Bank National Association
Jean B LeBlanc
McDermott Will & Emery LLP
2049 Century Park East, Ste. 3800
Los Angeles, CA 90067

Atty/ US Bank National Assn. as Trustee
William P. Smith, Nathan F. Coco, Miles W.
Hughes, & Jason J. DeJonker
McDermott, Will Emery
227 West Monroe St. Ste. 5400
Chicago,IL 60606

U.S. Bank National Association Corporate
Trust Services
Attn: Keith Marshall
633 West Fifth St. 24th Floor
Los Angeles, CA 90071

Universal Health Services
Robert E. Darby
Fulbright & Jaworski, LLP
555 South Flower St., 41st floor
Los Angeles, CA 90071

Atty/ Cardinal Health 110, Inc. et al
Greenberg Traurig LLP
Attn: S.L. Heyen/ J.K. Terry
1000 Louisiana #1800
Houston, TX 77002

Atty/ Scan Health
Karl E. Block, Esq.
Loeb & Loeb LLP
10100 Santa Monica Blvd. Ste. 2200
Los Angeles, CA 90067

Atty/Prime Healthcare Management, Inc./ Albert
L. Lewis, Jr./John Lloyd/ Edward J. Fazekas
Daniel P. Brunton, Esq.
Lauren B. Ross, Esq.
Latham & Watkins LLP
600 West Broadway, Suite 1800
San Diego, CA 92101-3375

Atty/Prime Healthcare Management, Inc.
Michael J. Sarrao, Esq.
Troy A. Schell, Esq.
5151 Walnut Avenue
Chino, CA 91710

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*
533501v1

**F 9013-3.1**