# <u>Exhibit A</u>

1  CHARLES D. AXELROD (STATE BAR NO. 39507)
   GARY E. KLAUSNER (STATE BAR NO. 69077)
2  H. ALEXANDER FISCH (STATE BAR NO. 223211)
   NEETA MENON (STATE BAR NO. 254736)
3  STUTMAN, TREISTER & GLATT
   PROFESSIONAL CORPORATION
4  1901 Avenue of the Stars
   12th Floor
5  Los Angeles, CA 90067
   Telephone:  (310) 228-5600
6  Telecopy:  (310) 228-5788
   E-mail:  caxelrod@stutman.com
7           gklausner@stutman.com
            afisch@stutman.com
8           nmenon@stutman.com

9  Chapter 9 Counsel for
   Valley Health System
10

11

12              UNITED STATES BANKRUPTCY COURT

13              CENTRAL DISTRICT OF CALIFORNIA

14                   RIVERSIDE DIVISION

15  In re                          )  Case No. 6:07-bk-18293-PC
                                    )
16  VALLEY HEALTH SYSTEM,           )  Chapter 9
                                    )
17                                  )
                                    )
18                                  )  FIRST AMENDED PLAN FOR THE
                                    )  ADJUSTMENT OF DEBTS OF VALLEY
                                    )  HEALTH SYSTEM DATED DECEMBER
19                                  )  17, 2009
                                    )
20                                  )       Disclosure Statement Hearing
                                    )
21                                  )  Date:     December 17, 2009
                                    )  Time:     2:00 p.m.
22               Debtor,            )  Place:    Courtroom 304
                                    )            United States Bankruptcy Court
23                                  )            3420 Twelfth Street
   _____)            Riverside, California
24

25

26  **NOTE:  The Bankruptcy Court Has Not Yet Approved A Disclosure Statement With Respect**

27  **To The Proposed Plan Of Adjustment Of Debts.  The Filing Of This Proposed Plan Is Not**

28  **Intended To And Should Not Be Construed To Be A Solicitation Of Acceptances Of The Plan.**

533946v2

# TABLE OF CONTENTS

Page(s)

I.    DEFINITIONS, INTERPRETATION AND RULES OF CONSTRUCTION . . . . . . . . 2

    A.    Definitions. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    B.    Rules of Construction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

II.   TREATMENT AND DEADLINE FOR THE ASSERTION OF
      ADMINISTRATIVE CLAIMS AND PROFESSIONAL CLAIMS . . . . . . . . . . . 10

    A.    Treatment Of Administrative Claims. . . . . . . . . . . . . . . . . . . . . . . . . . . 10

        1. .  Treatment of the Select Administrative Claims. . . . . . . . . . . . . . . . 10

        2.    Treatment of  All Other Administrative Claims, Except for
            Professional Claims. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

    B.    Treatment Of Professional Claims. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

    C.    Priority Claims In Chapter 9. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

    D.    Deadline For The Filing And Assertion Of Administrative Claims
        (Other Than Ordinary Course Administrative Claims) And
        Professional Claims. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

III.  DESIGNATION OF CLASSES OF CLAIM . . . . . . . . . . . . . . . . . . . . . . . . . . 12

IV.   TREATMENT OF CLAIMS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

    A.    Class 1A – Claims of the Bondholders of Series 1993 Bonds. . . . . . . . . . . . 13

        1.    Impairment And Voting. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

        2.    Treatment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

    B.    Class 1B – Claims of the Bondholders of the Series 1996 Bonds. . . . . . . . . 13

        1.    Impairment and Voting. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

        2.    Treatment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

    C.    Class 1C – Other Secured Claims. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

        1.    Impairment and Voting. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

        2.    Treatment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

    D.    Class 2A – General Unsecured Claims. . . . . . . . . . . . . . . . . . . . . . . . . . . 15

        1.    Impairment And Voting. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

        2.    Treatment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

E.   Class 2B – General Unsecured Claims of KM Strategic Management, Inc., Hemet Community Medical Group, Menifee Valley Community Medical Group, and LHIO, LLC and Claims of Constituent Members Thereof. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

    1.   Impairment And Voting. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

    2.   Treatment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

F.   Class 2C - Interests of Defined Benefit Plan Participants. . . . . . . . . . . . . . . 16

    1.   Impairment And Voting. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

    2.   Treatment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

V.   ACCEPTANCE OR REJECTION; CRAM DOWN . . . . . . . . . . . . . . . . . . . . . . 16

A.   Voting Of Claims. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

VI.   TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

A.   Assumption Of Executory Contracts And Unexpired Leases. . . . . . . . . . . . . 17

B.   Cure Payments. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

C.   Rejection of Executory Contracts And Unexpired Leases. . . . . . . . . . . . . . . 17

D.   Claims Arising From Rejection. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

VII.   IMPLEMENTATION AND MEANS FOR IMPLEMENTATION OF THIS PLAN . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

A.   The Two Hospital Transaction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

B.   Claims and Causes of Action. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

VIII.   DISTRIBUTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

A.   Distribution Agent. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

B.   Delivery Of Distributions. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

C.   Undeliverable Distributions. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

    1.   Holding Of Undeliverable Distributions. . . . . . . . . . . . . . . . . . . . . 20

    2.   Unclaimed Property. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

    3.   Notification And Forfeiture Of Unclaimed Property. . . . . . . . . . . . . 21

D.   Distributions of Cash. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

E.   Timeliness Of Payments. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

F.   Compliance With Tax Requirements. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

-ii-

533946v2

EXHIBIT A

G.    Time Bar To Cash Payments. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

H.    No *De Minimis* Distributions. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

I.    No Distributions On Account Of Disputed Claims. . . . . . . . . . . . . . . . . . . 22

J.    No Postpetition Accrual. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

IX.    DISPUTED CLAIMS; OBJECTIONS TO CLAIMS; PROSECUTION OF
OBJECTIONS TO DISPUTED CLAIMS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

A.    Claims Objection Deadline; Prosecution of Objections. . . . . . . . . . . . . . . 23

B.    Reserves, Payments, And Distributions With Respect To Disputed
Claims. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

X.    EFFECT OF CONFIRMATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

A.    Discharge Of The District. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

B.    Injunction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

C.    Term Of Existing Injunctions Or Stays. . . . . . . . . . . . . . . . . . . . . . . . . . . 24

XI.    RETENTION OF JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

XII.    CONDITIONS PRECEDENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

A.    Condition Precedent To Confirmation. . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

B.    Conditions Precedent To Effective Date. . . . . . . . . . . . . . . . . . . . . . . . . . 27

C.    Waiver Of Conditions To Effective Date. . . . . . . . . . . . . . . . . . . . . . . . . . 28

D.    Effect Of Failure Of Conditions. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

XIII.    MISCELLANEOUS PROVISIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

A.    Dissolution Of The Committee. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

B.    Severability. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

C.    Governing Law. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

D.    Effectuating Documents And Further Transactions. . . . . . . . . . . . . . . . . . 29

E.    Notice Of Effective Date. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

-iii-

533946v2

1

## TABLE OF AUTHORITIES

2 **CASES**

3
*In re Valley Health System*,
4      Case No. 6:07-bk-18293-PC ............................................................................ 4

5 **STATUTES**

6
11 U.S.C. § 102 .............................................................................. 10
7   11 U.S.C. § 105 .............................................................................. 24
    11 U.S.C. § 362 .............................................................................. 24
8   11 U.S.C. § 365(a) ............................................................................ 3
    11 U.S.C. § 365(f) ............................................................................ 3
9   11 U.S.C. § 503(b) ........................................................................... 2
    11 U.S.C. § 506(a) ........................................................................... 8
10  11 U.S.C. § 507(a) ..................................................................... 2, 12
    11 U.S.C. § 553 .............................................................................. 8
11  11 U.S.C. § 922 ............................................................................. 24
12  11 U.S.C. § 943 ........................................................................ 5, 11
    11 U.S.C. § 1102(a) .......................................................................... 5
13  11 U.S.C. § 1122 ..................................................................... 12, 14
    11 U.S.C. § 1124 .............................................................................. 6
14  11 U.S.C. § 1125 .............................................................................. 5
    11 U.S.C. § 1129 ............................................................................. 27
15  11 U.S.C. § 1142(b) ......................................................................... 26
16  California Health & Safety Code Section 32121(p) ........................................ 8

17 **RULES**

18
Bankruptcy Rule 9006(a) ................................................................ 10

19

20

21

22

23

24

25

26

27

28

EXHIBIT A

1    Valley Health System (the "District"), a California local healthcare district and a

2    debtor under chapter 9 of the United States Bankruptcy Code, hereby proposes the following Plan of

3    Adjustment of Debts (this "Plan") pursuant to section 941 of the Bankruptcy Code.[1]

4    On October 6, 2009, at a special public meeting, the District's Board of Directors

5    considered and approved the Asset Sale Agreement that was ultimately dated October 14, 2009 (the

6    "ASA"), by and between the District and Physicians For Healthy Hospitals, Inc., a Delaware

7    corporation ("PHH"), that provides for a sale of substantially all of the District's assets to PHH (the

8    "Two Hospital Transaction").  At an election held on December 15, 2009, the District obtained

9    Public Approval of the Two Hospital Transaction.  The Two Hospital Transaction is the primary

10    means by which this Plan will be implemented.

11    Please refer to the accompanying Disclosure Statement for a discussion of the

12    District's history, operations, and financial condition, and for a summary and analysis of this Plan

13    and other important information.  A copy of the ASA will be posted to the District's website.  The

14    District encourages you to read this Plan and the Disclosure Statement in their entirety before voting

15    to accept or reject this Plan.  No materials other than the Disclosure Statement and the various

16    Exhibits and Schedules attached to or incorporated therein have been approved for use in soliciting

17    acceptance or rejections of this Plan.

18    **I.    DEFINITIONS, INTERPRETATION AND RULES OF CONSTRUCTION**

19    **A.    Definitions.**

20    1.    **Administrative Claim** means any Claim for an administrative expense of the

21    kind described in sections 503(b) or 507(a)(2) of the Bankruptcy Code.

22    2.    **Allowed** means a Claim that:

23    a.    Is asserted in a proof of Claim filed in compliance with section 501 of

24    the Bankruptcy Code and any applicable orders of the Bankruptcy Court and as to which:

25    (i) no objection has been filed within the deadline established pursuant to Section IX; (ii) the

26    Bankruptcy Court has entered a Final Order allowing all or a portion of such Claim (but only

27

28    [1]  The definitions of capitalized terms used throughout this Plan are set forth in Section I.A.

533946v2

-2-

1    in the amount so allowed); or (iii) the Bankruptcy Court has entered a Final Order under

2    section 502(c) of the Bankruptcy Code estimating the amount of the Claim for purposes of

3    allowance;

4               b.      Is represented by the Select Administrative Note;

5               c.      Is subject to a stipulation between the District and the holder of such

6    Claim providing for the allowance of such Claim;

7               d.      Is deemed "allowed" pursuant to this Plan;

8               e.      Is designated as "allowed" in a pleading entitled "Designation of

9    Allowed Claims" (or a similar title of the same import) filed with the Bankruptcy Court by

10    the District on or after the Effective Date; or

11              f.      Is an Administrative Claim as to which the Bankruptcy Court has

12    entered a Final Order allowing all or a portion of such claim (but only in the amount so

13    allowed), or is represented by the Select Administrative Note.

14        3.      **ASA** means the Asset Sale Agreement dated October 14, 2009, by and

15    between PHH and the District.

16        4.      **Assumption/Assignment Motion** means the motion to be filed with the

17    Bankruptcy Court prior to the Sale Closing Date, in which the District will seek approval of the

18    assumption and immediate assignment of the executory contracts and unexpired leases as are set

19    forth or provided for in the ASA, pursuant to section 365(a) and (f)(2) of the Bankruptcy Code.

20        5.      **Ballot** means the ballot(s), in the form(s) approved by the Bankruptcy Court

21    in the Plan Solicitation Order, accompanying the Disclosure Statement and provided to each holder

22    of a Claim entitled to vote to accept or reject this Plan.

23        6.      **Bankruptcy Code** means title 11 of the United States Code, as amended from

24    time to time, as applicable to the Chapter 9 Case.

25        7.      **Bankruptcy Court** means the United States Bankruptcy Court for the Central

26    District of California, Riverside Division, or such other court that lawfully exercises jurisdiction

27    over the Chapter 9 Case.

28

-3-

533946v2

8.    **Bankruptcy Rules** means the Federal Rules of Bankruptcy Procedure, as amended from time to time, as applicable to the Chapter 9 Case, together with the local rules of the Bankruptcy Court applicable to the Chapter 9 Case. Unless otherwise indicated, references in this Plan to "Bankruptcy Rule _____" are to the specifically identified rule of the Federal Rules of Bankruptcy Procedure.

9.    **Bar Date** means the applicable date by which a particular proof of Claim must be filed, as established by the Bankruptcy Court.

10.    **Bond Documents** means (i) the Series 1993 IPA, (ii) the Series 1993 Indenture, and (iii) the Series 1996 Indenture.

11.    **Bondholders** mean the owners of the Bonds.

12.    **Bonds** means, collectively, the Series 1993 COPs and the Series 1996 Bonds.

13.    **Cash** means cash and cash equivalents, including withdrawable bank deposits, wire transfers, checks, and other similar items.

14.    **Chapter 9 Case** means the case under chapter 9 of the Bankruptcy Code commenced by the District, styled as *In re Valley Health System*, Case No. 6:07-bk-18293-PC, currently pending in the Bankruptcy Court.

15.    **Claim** means a claim against the District or the property of the District within the meaning of section 101(5) of the Bankruptcy Code.

16.    **Class** means one of the classes of Claims established under Section III pursuant to section 1122 of the Bankruptcy Code.

17.    **Class 2B Claims** means the rejection and postpetition breach claims held by KM Strategic Management, Inc., Hemet Community Medical Group, Menifee Valley Community Medical Group and LHIO, LLC, including claims of constituent members thereof which are derivative from such claims by the preceding entities, which are currently asserted in an aggregate amount of approximately $55 million and which claims have been docketed in the claims docket in the Chapter 9 Case as claim nos. 134, 135, 136 and 168.

18.    **Collateral** means any property or interest in property of the District subject to a lien or security interest that is not subject to avoidance under the Bankruptcy Code or otherwise

-4-

533946v2

1 | invalid under the Bankruptcy Code or applicable federal and/or state law.

2 |       19.    **Committee** means the Official Committee of Unsecured Creditors of Valley

3 | Health System, appointed in the Chapter 9 Case by the Office of the United States Trustee pursuant

4 | to section 1102(a)(1) of the Bankruptcy Code as the membership thereof has been reconstituted from

5 | time to time by the Office of the United States Trustee.

6 |       20.    **Confirmation Date** means the date on which the Clerk of the Bankruptcy

7 | Court enters the Confirmation Order on the docket of the Bankruptcy Court.

8 |       21.    **Confirmation Order** means the order of the Bankruptcy Court confirming

9 | this Plan under section 943 of the Bankruptcy Code.

10 |       22.    **Defined Benefit Plan Participants** means the participants in the VHS

11 | Retirement Plan.

12 |       23.    **Disallowed** means a Claim or portion thereof that has been disallowed by an

13 | Order.

14 |       24.    **Disclosure Statement** means the disclosure statement, and all exhibits and

15 | schedules incorporated therein, that relates to this Plan and that is approved by the Bankruptcy Court

16 | pursuant to section 1125 of the Bankruptcy Code, as the same may be amended, modified or

17 | supplemented in accordance with the Bankruptcy Code.

18 |       25.    **Disputed Claim** means any Claim or portion thereof that has not become

19 | Allowed and that is not Disallowed.  In the event that any part of a Claim is Disputed, except as

20 | otherwise provided in this Plan, such Claim shall be deemed Disputed in its entirety for purposes of

21 | distribution under this Plan unless the District agrees otherwise in its sole discretion.  Without

22 | limiting the foregoing, a Claim that is the subject of a pending application, motion, complaint,

23 | objection, or any other legal proceeding seeking to disallow, limit, reduce, subordinate, or estimate

24 | such Claim shall be deemed to be Disputed.

25 |       26.    **District** means Valley Health System, a California local healthcare district

26 | and the chapter 9 debtor in the Chapter 9 Case.

27 |       27.    **District Assets** means all the assets of the District which the District has

28 | agreed to transfer to PHH at closing of the Two Hospital Transaction pursuant to the ASA.

-5-

533946v2

28.    **Effective Date** means the first day after the date on which the conditions specified in Section XII.B have been satisfied or waived.

29.    **Final Order** means a judgment, order, ruling, or other decree issued and entered by the Bankruptcy Court or by any state or other federal court or other tribunal having jurisdiction over the subject matter thereof which judgment, order, ruling, or other decree has not been reversed, stayed, modified, or amended and as to which: (a) the time to appeal or petition for review, rehearing or certiorari has expired and no appeal or petition for review, rehearing or certiorari is then pending; or (b) any appeal or petition for review, rehearing or certiorari has been finally decided and no further appeal or petition for review, rehearing or certiorari can be taken or granted.

30.    **General Unsecured Claim** means an Unsecured Claim.

31.    **Impaired** means a Claim or Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

32.    **Indenture Trustee** means U.S. Bank, National Association when acting in that capacity in respect of the Bonds.

33.    **Kaiser** means Kaiser Foundation Hospitals.

34.    **MetLife Group Annuity Contract** means the MetLife Group Annuity Contract No. 884 as amended, pursuant to which the VHS Retirement Plan is administered by MetLife Group.

35.    **Moreno** means Moreno Valley Community Hospital, located in Moreno Valley, California.

36.    **Moreno Asset Sale Agreement** means the Asset Sale Agreement dated August 8, 2007 between the District and Select, as such has been amended by the First Amendment to Asset Sale Agreement by and among the District, Select and Kaiser dated February 25, 2008 and as further amended by the Second and Third Amendments thereto and side letter agreement dated May 13, 2008.

533946v2

-6-

37.    **MOU** means the Memorandum of Understanding, dated September 16, 2009, entered into by and between the District and PHH, which sets forth a summary of the salient terms of the ASA.

38.    **Ordinary Course Administrative Claim** means an Administrative Claim, other than a Professional Claim, that represents an obligation incurred in the ordinary course of business of the District (as determined by the District in its sole discretion).

39.    **Petition Date** means December 13, 2007.

40.    **PHH** means Physicians for Healthy Hospitals, Inc., a Delaware corporation, the "Purchaser" under the ASA.

41.    **Plan** means this Plan of Adjustment of Debts, together with all Exhibits hereto, each in their present form or as they may be altered, amended or modified from time to time in accordance with the provisions of this Plan, the Confirmation Order, the Bankruptcy Code, and the Bankruptcy Rules.

42.    **Plan Solicitation Order** means the Order Approving (I) Adequacy Of Information In Disclosure Statement With Respect To The District's Plan Of Adjustment; (II) Form, Scope And Nature of Solicitation, Balloting, Tabulation And Notices With Respect Thereto; And (III) Related Confirmation Procedures, Deadlines And Notices, by which the Bankruptcy Court approved the Disclosure Statement as containing adequate information for the purpose of dissemination and solicitation of votes on and confirmation of this Plan and established certain rules, deadlines, and procedures for the solicitation of votes with respect to and the balloting on this Plan.

43.    **PHH Assumed Other Liabilities** means the liabilities of the District as of the Effective Date that are to be assumed by PHH under section 1.2.1(a)(iii) of the ASA.

44.    **PHH Administrative Claims Fund** means (i) the $4 million dollars that PHH is required, pursuant to section 1.2.4.1 of the ASA, to deposit into a separate account designated solely for the payment of Allowed Administrative Claims that are not PHH Assumed Other Liabilities, and (ii) monies in excess of $4 million that may be payable to the District under section 1.2.4.3 of the ASA.

45.    **Public Approval** means the requisite votes that were obtained in a public election which was held on December 15, 2009, in accordance with the requirements of California Health & Safety Code Section 32121(p), which votes allow the District to consummate the Two Hospital Transaction as contemplated by the ASA.

46.    **Professional Claim** means a Claim required to be filed pursuant to Section II for approval of amounts paid or to be paid for services or expenses in the Chapter 9 Case or incident to this Plan.

47.    **Rejection Motion** means the motion to be filed, pursuant to section 365(a) of the Bankruptcy Court, by the District pursuant to which the District shall seek approval and authorization for the rejection of such executory contracts and unexpired leases as shall be identified in the Rejection Motion.

48.    **Rights of Action** means any rights, claims, or causes of action owned by, accruing to, or assigned to the District pursuant to the Bankruptcy Code or pursuant to any contract, statute, or legal theory, including without limitation any rights to, claims, or causes of action for recovery under any policies of insurance issued to or on behalf of the District.

49.    **Sale Closing Date** means the date that the Two Hospital Transaction is consummated pursuant to the ASA.

50.    **Secured Claim** means a Claim that is secured, in whole or in part, (a) by a lien that is not subject to avoidance or subordination under the Bankruptcy Code or applicable non-bankruptcy law; or (b) as a result of rights of setoff under section 553 of the Bankruptcy Code; but in any event only to the extent of the value, determined in accordance with section 506(a) of the Bankruptcy Code, of the holder's interest in the District's interest in property or to the extent of the amount subject to such setoff, as the case may be.

51.    **Select** means Select VHS Acquisition Company, LLC.

52.    **Select's Allowed Administrative Claim** means the Claim represented by the Select Administrative Note that is entitled to administrative priority in the Chapter 9 Case.

53.    **Select Administrative Note** means the 5% unsecured promissory note of the District issued to Select at the closing of the sale of Moreno to Kaiser, with a current approximate

533946v2

-8-

1 | balance of $8,400,000, consistent with the form thereof that appears as Exhibit "A" to the Select

2 | Stipulation.

3 |         54.    **Select Stipulation** means the stipulation among the District, Select and the

4 | Indenture Trustee that was filed with the Bankruptcy Court and appears on the Docket of the

5 | Chapter 9 Case as document number 199.

6 |         55.    **Series 1993 COPs** means the Valley Health System Certificates of

7 | Participation (1993 Refunding Project) issued pursuant to (i) the Series 1993 IPA and (ii) the Series

8 | 1993 Indenture. The COPs designated as Series 1993 have a current principal amount of

9 | approximately $40,615,000.

10 |         56.    **Series 1993 Indenture** means the Trust Agreement dated June 1, 1993 by and

11 | among the Valley Health System Service Corporation, the District and First Interstate Bank as

12 | Trustee, as predecessor indenture trustee, in connection with the Series 1993 COPs.

13 |         57.    **Series 1993 IPA** means the Installment Purchase Agreement dated June 1,

14 | 1993, entered into by the Valley Health System Service Corporation and the District in connection

15 | with the Series 1993 COPs.

16 |         58.    **Series 1996 Bonds** means the Valley Health System Hospital Revenue Bonds

17 | (Refunding and Improvements Project) 1996 Series A issued pursuant to the Series 1996 Indenture.

18 | The Bonds designated as Series 1996 have a current principal amount of approximately $4,935,000.

19 |         59.    **Series 1996 Indenture** means the Trust Indenture dated January 1, 1996,

20 | entered into between the District and First Interstate Bank, as predecessor indenture trustee, in

21 | connection with the Series 1996 Bonds.

22 |         60.    **SNF** means Hemet Valley Healthcare Center, located in Hemet, California, at

23 | which the District currently operates a chemical dependency program and Sage Retreat.

24 |         61.    **Two Hospital Transaction** means the sale of the District Assets to PHH

25 | pursuant to the ASA in the event that Public Approval is obtained.

26 |         62.    **Unimpaired** means a Claim that is not Impaired within the meaning of

27 | section 1124 of the Bankruptcy Code.

28 |

533946v2

63.    **Unsecured Claim** means any claim that is not a Secured Claim or an Administrative Claim.

64.    **VHS Retirement Plan** means the "Valley Health System Retirement Plan Adopted January 1, 1971", as amended.  Under section 4.8 of the VHS Retirement Plan, the plan was frozen effective May 4, 1999, such that the "Accrued Benefit" of each plan participant was frozen as of this date, and participants have accrued no benefits under the plan since such date.

**B.    Rules of Construction.**

The following rules of construction apply to this Plan:  (a) unless otherwise specified, all references in this Plan to "Sections" and "Exhibits" are to the respective Section in or Exhibit to this Plan, as the same may be amended or modified from time to time; (b) the headings in this Plan are for convenience of reference only and do no limit or otherwise affect the provisions of this Plan; (c) words denoting the singular number include the plural number and vice versa; (d) the rules of construction set forth in section 102 of the Bankruptcy Code apply; (e) in computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006(a) apply; and (f) the words "herein," "hereof," "hereto," "hereunder," and others of similar import refer to this Plan as a whole and not to any particular Section, subsection, or clause contained in this Plan.

**II.    TREATMENT AND DEADLINE FOR THE ASSERTION OF ADMINISTRATIVE CLAIMS AND PROFESSIONAL CLAIMS**

**A.    Treatment Of Administrative Claims.**

**1.    Treatment of the Select Administrative Claims.**

Pursuant to section 1.2.1(a)(ii) of the ASA, at the closing of the Two Hospital Transaction, the Select Note shall be satisfied in full or all obligations evidenced thereby shall be assumed by PHH and the District shall be released from any further liability in connection with the Select Administrative Note.  The District understands that Select has agreed to the foregoing treatment.

533946v2

-10-

2.    **Treatment of All Other Administrative Claims, Except for Professional Claims.**

Pursuant to paragraph 1.2.1(a)(iii) of the ASA, PHH shall, upon closing of the Two Hospital Transaction, assume and satisfy certain postpetition administrative claims of the District which are defined therein as the "Assumed Other Liabilities". The Assumed Other Liabilities consist of the "Assumed Current Liabilities" and "Other Liabilities", both of which are defined in the aforesaid section of the ASA. The District believes that substantially all of its administrative claims, with the exception of professional fees and certain claims arising from the rejection of certain postpetition executory contracts, will be included in the Assumed Other Liabilities. PHH shall also contribute additional funds as are necessary to satisfy other Administrative Claims, including Professional Claims ("Covered Claims", as defined in the ASA) in the event the $4 million contributed at Closing is insufficient to pay such Covered Claims.

To the extent of any administrative claims, other than the Assumed Other Liabilities, and except as provided in Section II.B, with respect to Professional Claims or to the extent that the holder of an Allowed Administrative Claim agrees to a different treatment, the District or its agent shall pay to each holder of an Allowed Administrative Claim, in full satisfaction, release and discharge of such Claim, Cash in an amount equal to such Allowed Administrative Claim on the later of (i) the Effective Date, (ii) the date on which such Claim becomes an Allowed Administrative Claim, or as soon thereafter as is practicable, and (iii) the date funds are to be available for that purpose under section 1.2.4.3 of the ASA.

From and after the Sale Closing Date, and except for Professional Claims, creditors holding Claims that relate to, or arise from, any of the PHH Assumed Other Liabilities and Covered Claims shall only have a right to collect payment on account of such Claims from PHH and the Administrative Claims Fund, and the District shall thereafter be relieved of any and all liability for the payment of any and all Claims relating to, or arising from, any of the PHH Assumed Current Liabilities or Covered Claims.

533946v2

-11-

1    **B.    Treatment Of Professional Claims.**

2    Pursuant to section 943(a)(3) of the Bankruptcy Code, all amounts paid or to be paid

3    for services or expenses in the Chapter 9 Case or incident to this Plan must be disclosed to the

4    Bankruptcy Court and must be reasonable.  There shall be paid to each holder of a Professional

5    Claim, either from the PHH Administrative Claims Fund or the District's cash on hand, in full

6    satisfaction, release and discharge of such Claim, Cash in an amount equal to that portion of such

7    Claim that the Bankruptcy Court approves as reasonable with credit being given to the extent such

8    Claim previously has been paid, on or as soon as reasonably practicable following the date on which

9    the Bankruptcy Court enters an Order determining such reasonableness.

10    **C.    Priority Claims In Chapter 9.**

11    The only kind of priority claims incorporated into Chapter 9 through Section 901 are

12    Administrative Claims allowed under section 507(a)(2) of the Bankruptcy Code.  The treatment of

13    all such Administrative Claims is set forth above in Sections II.A.1 and II.A.2.  No other kinds of

14    priority claims set forth in section 507 of the Bankruptcy Code are recognized in chapter 9 cases.

15

16    **D.    Deadline For The Filing And Assertion Of Administrative Claims (Other Than Ordinary Course Administrative Claims) And Professional Claims.**

17    **All requests for payment or any other means of preserving and obtaining**

18    **payment of Administrative Claims (other than ordinary course Administrative Claims and**

19    **claims under the Select Administrative Note) that have not been paid, released, or otherwise**

20    **settled, and all requests for approval of Professional Claims, must be filed with the Bankruptcy**

21    **Court and served upon the District no later than thirty (30) days after the date on which the**

22    **Notice of Effective Date is mailed.**  Any request for payment of an Administrative Claim or a

23    Professional Claim that is not timely filed by such date will be forever barred, and holders of such

24    Claims shall be barred from asserting such Claims in any manner against the District.

25    **III.    DESIGNATION OF CLASSES OF CLAIM**

26    Pursuant to section 1122 of the Bankruptcy Code, all Claims other than

27    Administrative Claims and Professional Claims are classified for all purposes, including voting,

28    confirmation, and distribution pursuant to this Plan, as follows:

-12-

533946v2

1                Class 1A – Claims of the Bondholders of the Series 1993 COPs

2                Class 1B – Claims of the Bondholders of the Series 1996 Bonds

3                Class 1C – Other Secured Claims

4                Class 2A – General Unsecured Claims

5                Class 2B - General Unsecured Claims of KM Strategic Management, Inc., Hemet

6  Community Medical Group, Menifee Valley Community Medical Group, LHIO, LLC and Claims of

7  Constituent Members Thereof

8                Class 2C – Defined Benefit Plan Claims

9  **IV.     TREATMENT OF CLAIMS**

10        **A.     Class 1A – Claims of the Bondholders of Series 1993 Bonds.**

11             **1.     Impairment And Voting.**

12            Class 1A is Impaired by this Plan since the treatment of this Class will affect the

13  legal, equitable or contractual right to which the holders of Claims in this Class are entitled and,

14  accordingly, this Class is entitled to vote to accept or reject this Plan in accordance with the Plan

15  Solicitation Order.

16             **2.     Treatment.**

17            The Indenture Trustee for the Series 1993 COPs will be paid, on the Sale Closing

18  Date, a sum sufficient to fully satisfy all Allowed Class 1A Claims, including payment of all

19  outstanding principal and accrued interest on the Series 1993 COPs through the Sale Closing Date,

20  plus all related outstanding fees and expenses of the Indenture Trustee and its attorneys and advisors

21  to which the Indenture Trustee is entitled.

22        **B.     Class 1B – Claims of the Bondholders of the Series 1996 Bonds.**

23             **1.     Impairment and Voting.**

24            Class 1B is Impaired by this Plan since the treatment of this Class will affect the

25  legal, equitable or contractual right to which the holders of Claims in this Class are entitled and,

26  accordingly, this Class is entitled to vote to accept or reject this Plan in accordance with the Plan

27  Solicitation Order.

28

533946v2

2.    **Treatment.**

The Indenture Trustee for the Series 1996 Bonds will be paid, on the Sale Closing Date, a sum sufficient to fully satisfy all Allowed Class 1B Claims, including payment of all outstanding principal and accrued interest on the Series 1996 Bonds through the Sale Closing Date, plus all related outstanding fees and expenses of the Indenture Trustee and its attorney and advisors to which the Indenture Trustee is entitled.

C.    **Class 1C – Other Secured Claims.**

1.    **Impairment and Voting.**

In accordance with Bankruptcy Code section 1122(a), to the extent that there is more than one Holder of an Allowed Class 1C Claim, the Claim of each such Holder shall be deemed to be classified in a separate sub-class of Class 1C, such that each such sub-class of Class 1C shall be deemed to be a separate Class under this Plan.

Class 1C is Unimpaired by this Plan and, accordingly, the holders of Claims in this Class are not entitled to vote such Allowed Claims, if any, to accept or reject this Plan and the Holders of Claims in Class 1C are presumed to have accepted this Plan.

2.    **Treatment.**

As soon as practicable after the Effective Date, each entity holding an Allowed Class 1C Claim will receive, at the election of the District, in its discretion, one of the following treatments in full satisfaction, discharge, exchange and release of its Allowed Class 1C Claim:

(a)    The Holder of the Class 1C Claim will receive the Collateral in which that Holder has a security interest; or

(b)    The Holder of the Class 1C Claim will receive any proceeds actually received by the District from the sale or disposition of the Collateral in which that Holder has a security interest; or

(c)    The Holder of the Class 1C Claim will receive Cash in the amount of that Holder's Allowed Class 1C Claim; or

-14-

533946v2

1              (d)     The Holder of the Class 1C Claim will receive such other distributions or

2    treatment as are necessary to leave the rights of said Holder Unimpaired or as

3    are necessary to otherwise satisfy those requirements of chapter 11 that are

4    incorporated into chapter 9 of the Bankruptcy Code.

5    The District shall have fourteen (14) days after the date on which the Class 1C Claim

6    is Allowed or deemed Allowed, to elect which treatment to provide to such holder of an Allowed

7    Class 1C Claim.

8       **D.**     **Class 2A – General Unsecured Claims.**

9            **1.**     **Impairment And Voting.**

10    Class 2A is Impaired by this Plan and, accordingly, the holders of Allowed

11    Claims classified into Class 2A are entitled to vote their Allowed General Unsecured Claims to

12    accept or reject this Plan in accordance with the Plan Solicitation Order.

13            **2.**     **Treatment.**

14    The holders of Allowed Claims classified into Class 2A shall receive their pro

15    rata share of $17 million or such increased or reduced amount that will be available for payment of

16    such Claims, as discussed below, which distributions shall be paid in four equal annual installments

17    without interest, with the first payment to be made on the first anniversary of the Sale Closing Date,

18    and on each anniversary thereafter; provided, however, that such $17 million may either be

19    (a) increased by any unused portion of the $4 million that PHH will deposit into the PHH

20    Administrative Claims Fund; or (b) reduced, at the time and in the manner set forth in section 1.2.4.3

21    of the ASA, by any amount in excess of the $4 million that PHH may be required to deposit into the

22    PHH Administrative Claims Fund to pay Allowed Administrative Claims in full.

23       **E.**     **Class 2B – General Unsecured Claims of KM Strategic Management, Inc.,
Hemet Community Medical Group, Menifee Valley Community Medical Group,**

24    **and LHIO, LLC and Claims of Constituent Members Thereof.**

25            **1.**     **Impairment And Voting.**

26    Class 2B is Impaired by this Plan and, accordingly, the holders of Claims

27    classified into Class 2B are entitled to vote their General Unsecured Claims to accept or reject this

28    Plan in accordance with the Plan Solicitation Order.

-15-

533946v2

2.    **Treatment.**

Upon the Sale Closing Date, PHH will assume or otherwise satisfy all obligations owed to holders of Allowed Class 2B Claims, with the District being fully and completely released from any liability thereunder and held harmless from such Claims by PHH. Accordingly, the holders of Allowed Class 2B Claims shall receive no distributions from, and shall have no recourse to, the District or any property of the District.

F.    **Class 2C - Interests of Defined Benefit Plan Participants.**

1.    **Impairment And Voting.**

Class 2C is Unimpaired by this Plan and, accordingly, the Defined Benefit Plan Participants are not entitled to vote such Allowed Claims, if any, as they may have to accept or reject this Plan.

2.    **Treatment.**

Defined Benefit Plan Participants will be entitled to the same rights and benefits to which such participants are currently entitled under the VHS Retirement Plan and the MetLife Group Annuity Contract, and such participants shall have no recourse to the District or to any assets of the District, and shall not be entitled to receive any distributions under this Plan. Instead, all unallocated amounts held by MetLife Group, pursuant to the VHS Retirement Plan and the MetLife Group Annuity Contract, will continue to be made available to provide retirement benefits for participants in the manner indicated under the provisions of the VHS Retirement Plan and the MetLife Group Annuity Contract. Accordingly, the treatment of Allowed Class 2C Claim holders set forth herein shall not affect any legal, equitable or contractual rights to which the VHS Retirement Plan participants are entitled.

V.    **ACCEPTANCE OR REJECTION; CRAM DOWN**

A.    **Voting Of Claims.**

Each holder of an Allowed Claim classified into Classes 1A, 1B, 2A and 2B shall be entitled to vote each such Claim to accept or reject this Plan.

With respect to any Impaired Class of Claims that fails to accept this Plan, the District, as proponent of this Plan, intends to request that the Bankruptcy Court nonetheless confirm

-16-

533946v2

1  this Plan pursuant to the so-called "cram down" powers set forth in Bankruptcy Code section

2  1129(b).

3  **VI.    TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

4      **A.    Assumption Of Executory Contracts And Unexpired Leases.**

5          As to any executory contract or unexpired lease that PHH notifies the District in

6  writing that it has duly elected to assume in the manner and in the time period required by the ASA,

7  the District shall make the Assumption/Assignment Motion, which, if granted shall cause the

8  District to assume and assign such contracts and leases to PHH pursuant to order of the Bankruptcy

9  Court.

10      **B.    Cure Payments.**

11          After the provision of notice and the opportunity for a hearing on the

12  Assumption/Assignment Motion, in accord with the Bankruptcy Rules, the Bankruptcy Court shall

13  resolve all disputes regarding: (a) the amount of any cure payment to be made in connection with the

14  assumption of any contract or lease; (b) the ability of PHH to provide "adequate assurance of future

15  performance" within the meaning of section 365 of the Bankruptcy Code under the contract or lease

16  to be assumed; and (c) any other matter pertaining to such assumption and assignment.  Any party to

17  an executory contract or unexpired lease that is included in the Assumption/Assignment Motion that

18  asserts that any payment or other performance is due as a condition to the proposed assumption shall

19  file with the Bankruptcy Court and serve upon the District a written statement and accompanying

20  declaration in support thereof, specifying the basis for its claim within such deadline and in the

21  manner established for filing objections as shall be set forth in the Assumption/Assignment Motion.

22  The failure to timely file and serve such a statement in accordance with the instructions set forth in

23  the Assumption/Assignment Motion shall be deemed to be a waiver of any and all objections to the

24  proposed assumption and any claim for cure amounts of the agreement at issue.

25      **C.    Rejection of Executory Contracts And Unexpired Leases.**

26          The Rejection Motion shall seek authority to reject such executory contracts and

27  unexpired leases that PHH has not elected to assume that the District in the exercise of its business

28

-17-

533946v2

1  judgment deems warranted.  The District anticipates rejecting any executory contract and unexpired

2  lease that is not needed for it to continue operating as a healthcare district.

3        **D.**      **Claims Arising From Rejection.**

4        Proofs of Claims arising from the rejection of executory contracts or unexpired leases

5  must be filed with the Bankruptcy Court and served on the District no later than thirty (30) days after

6  the date on which notice of entry of the order approving the rejection is mailed.  Any Claim for

7  which a proof of Claim is not filed and served within such time will be forever barred and shall not

8  be enforceable against the District or its assets, properties, or interests in property.  Unless otherwise

9  ordered by the Bankruptcy Court, all such Claims that are timely filed as provided herein shall be

10  classified into Class 2A and treated accordingly.

11  **VII.**    **IMPLEMENTATION AND MEANS FOR IMPLEMENTATION OF THIS PLAN**

12        **A.**      **The Two Hospital Transaction.**

13        PHH will provide the following combination of cash and assumption of liabilities to

14  enable the District to implement this Plan and satisfy its obligations under the Two Hospital

15  Transaction described in this Plan:

16        (1)     An amount of cash sufficient to pay the Allowed Claims in Classes 1A and 1B

17  in full, on the Sale Closing Date, after application of any reserves held internally by the District for

18  payment of interest or principal on Class 1A and Class 1B Claims.

19        (2)     Assumption of the Select Note.

20        (3)     Assumption of the PHH Assumed Current Liabilities and indemnification of

21  the District with respect thereto.

22        (4)     Payment in full of Administrative Claims that are not part of the PHH

23  Assumed Current Liabilities from the $4 million PHH Administrative Claims Fund or such

24  additional monies as are needed to pay Allowed Administrative Claims, to be funded by PHH

25  pursuant to section 1.2.4 of the ASA.

26        (5)     Contribute $17 million towards payment of Allowed Class 2A Claims in four

27  equal annual payments, with the first distribution to be made on the first anniversary of the Sale

28  Closing Date; provided however, that to the extent the PHH Administrative Claims Fund is

-18-

1  insufficient to pay all of the Allowed Administrative Claims in full, PHH shall be obligated to

2  advance any such additional amounts as are necessary to pay all Allowed Administrative Claims,

3  and any amount so advanced shall be deducted dollar for dollar from PHH's obligation to contribute

4  $17 million for the payment of Allowed Class 2A General Unsecured Claims while, conversely, to

5  the extent the PHH Administrative Claim Fund is not fully needed to pay Allowed Administrative

6  Claims, such excess shall be added to the $17 million to be paid pro rata to Class 2A.

7         (6)    Assume or otherwise satisfy claims designated in the Bankruptcy Court

8  docket by numbers 134, 135, 136 and 168 and indemnify and hold the District harmless with respect

9  thereto.

10        (7)    Accept assignment of the contract and leases as required by the ASA.

11        (8)    Pay the severance payments owing to those District employees to whom PHH

12  does extend an offer of employment consistent with the terms set forth in the ASA or its Schedules.

13        (9)    Provide $400,000 per year to the District, commencing on the Sale Closing

14  Date, for a period of five (5) years for use by the District, among other things, to pay its ongoing

15  operating expenses, including payroll and professional fees, and to fund any necessary elections,

16  monitor PHH's performance under the ASA, evaluate, analyze and object to creditor claims and

17  resolve any disputes concerning creditor claims, and make distributions to creditors under this Plan.

18        (10)   Pay, for a period of five (5) years from the Sale Closing Date, the premiums

19  for (a) the District's directors and officers tail errors and omissions insurance, which is currently

20  estimated at $450,000 and (b) the general liability and medical malpractice tail insurance currently

21  estimated at $3,750,000.

22     **B.    Claims and Causes of Action.**

23        Pursuant to section 1.6.12 of the ASA, all of the District's claims, causes of action,

24  rights of recovery, rights of offset, recoupment rights to refunds and similar rights shall be

25  transferred to PHH with certain limited exceptions set forth in section 1.7 of the ASA or Schedule

26  1.6.12 to the ASA.

27        The failure to list in the Disclosure Statement any potential or existing Right of

28  Action retained by the District under the ASA generally or specifically is not intended to and shall

533946v2

-19-

1    not limit the rights of the District to pursue any such action.  Unless a Right of Action is expressly

2    waived, relinquished, released, compromised or settled in this Plan, the District expressly reserves

3    all Rights of Action for later adjudication and, as a result, no preclusion doctrine, including the

4    doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial,

5    equitable or otherwise) or laches, shall apply to such Rights of Action upon or after the confirmation

6    or consummation of this Plan or the Effective Date.  In addition, the District expressly reserves the

7    right to pursue or adopt against any other entity any claims alleged in any lawsuit in which the

8    District is a defendant or an interested party.

9    **VIII.  DISTRIBUTIONS**

10        **A.**    **Distribution Agent.**

11            On or after the Effective Date, the District may retain one or more agents to perform

12    or assist it in performing the distributions to be made pursuant to this Plan, which agents may

13    perform without bond.  The District may provide reasonable compensation to any such agent(s)

14    without further notice or Court approval.

15        **B.**    **Delivery Of Distributions.**

16            All distributions to any holder of an Allowed Claim shall be made at the address of

17    such holder as set forth in the books and records of the District or its agents, unless the District has

18    been notified by such holder in a writing that contains an address for such holder different from the

19    address reflected in its books and records.  All distributions to the Bondholders shall be made in

20    accordance with the operative documents that govern the Bonds.

21        **C.**    **Undeliverable Distributions.**

22            **1.**    **Holding Of Undeliverable Distributions.**

23            If any distribution to any holders is returned to the District or its agent as

24    undeliverable, no further distributions shall be made to such holder unless and until the District is

25    notified in writing of such holder's then-current address.  Unless and until the District is so notified,

26    such distribution shall be deemed to be "Unclaimed Property" and shall be dealt with in accordance

27    with Section VIII.C.2.

28

533946v2

1      2.      **Unclaimed Property.**

2           If any entity entitled to receive distributions pursuant to this Plan does not

3      present itself on the Effective Date or on such other date on which such entity becomes eligible for

4      distribution, such distributions shall be deemed to be "Unclaimed Property." Unclaimed Property

5      shall be set aside and held in a segregated account to be maintained by the District pursuant to the

6      terms of this Plan.

7      3.      **Notification And Forfeiture Of Unclaimed Property.**

8           On the first anniversary of the Effective Date, the District shall file with the

9      Bankruptcy Court a list of Unclaimed Property, together with a schedule that identifies the name and

10     last-known address of holders of the Unclaimed Property; the District otherwise shall not be required

11     to attempt to locate any such entity. On the second anniversary of the Effective Date, all remaining

12     Unclaimed Property and accrued interest or dividends earned thereon shall be remitted to and vest in

13     the District.

14     D.      **Distributions of Cash.**

15          Any payment of Cash to be made by the District or its agent pursuant to this Plan

16     shall be made by check drawn on a domestic bank or by wire transfer, at the sole option of the

17     District.

18     E.      **Timeliness Of Payments.**

19          Any payments or distributions to be made pursuant to this Plan shall be deemed to be

20     timely made if made within fourteen (14) days after the dates specified in this Plan; provided,

21     however, that all distributions on the Class 1A and Class 1B Claims will be paid on the Sale Closing

22     Date. Whenever any distribution to be made under this Plan shall be due on a day that is a Saturday,

23     Sunday, or legal holiday, such distribution instead shall be made, without interest, on the

24     immediately succeeding day that is not a Saturday, Sunday, or legal holiday, but shall be deemed to

25     have been made on the date due.

26     F.      **Compliance With Tax Requirements.**

27          The District shall comply with all tax withholding and reporting requirements

28     imposed on it by any government unit, and all distributions pursuant to this Plan shall be subject to

-21-

533946v2

EXHIBIT A

81

1  such withholding and reporting requirements. In connection with each distribution with respect to

2  which the filing of an information return (such as Internal Revenue Service Form 1099 or 1042) or

3  withholding is required, the District shall file such information return with the Internal Revenue

4  Service and provide any required statements in connection therewith to the recipients of such

5  distribution, or effect any such withholding and deposit all moneys so withheld to the extent required

6  by law. With respect to any entity from whom a tax identification number, certified tax

7  identification number, or other tax information is required by law to avoid withholding has not been

8  received by the District, the District at its sole option, may withhold the amount required and

9  distribute the balance to such entity or decline to make such distribution until the information is

10  received.

11      **G.**    **Time Bar To Cash Payments.**

12      Checks issued by the District on account of Allowed Claims shall be null and void if

13  not negotiated within ninety (90) days from and after the date of issuance thereof. Requests for

14  reissuance of any check shall be made directly to the District by the holder of the Allowed Claim

15  with respect to which such check originally was issued. Any claim in respect of such a voided check

16  shall be made on or before the second anniversary of the Effective Date. After such date, all Claims

17  in respect of voided checks shall be discharged and forever barred and the District shall retain all

18  moneys related thereto.

19      **H.**    **No *De Minimis* Distributions.**

20      Notwithstanding any other provision of this Plan, no Cash payment of less than ten

21  dollars ($10.00) shall be made by the District on account of any Allowed Claim.

22      **I.**    **No Distributions On Account Of Disputed Claims.**

23      Notwithstanding anything to the contrary in this Plan, no distributions shall be made

24  on account of any part of any Disputed Claim until such Claim becomes Allowed (and then only to

25  the extent so Allowed). Distributions made after the Effective Date in respect of Claims that were

26  not Allowed as of the Effective Date (but which later became Allowed) shall be deemed to have

27  been made as of the Effective Date.

28

533946v2

**J.      No Postpetition Accrual.**

Unless otherwise specifically provided in this Plan or Allowed by order of the Bankruptcy Court, the District shall not be required to pay to any holder of a Claim any interest, penalty or late charge accruing with respect to such Claim on or after the Petition Date.  As provided in this Plan, all postpetition interest which has accrued on the Bonds will be paid through the Sale Closing Date.

**IX.      DISPUTED CLAIMS; OBJECTIONS TO CLAIMS; PROSECUTION OF OBJECTIONS TO DISPUTED CLAIMS.**

**A.      Claims Objection Deadline; Prosecution of Objections.**

The District shall have the right to object to the allowance of Claims filed with the Bankruptcy Court with respect to which liability or allowance is disputed in whole or in part.  Unless otherwise ordered by the Bankruptcy Court, the District shall file and serve any such objections to Claims by not later than one hundred and eighty (180) days after the Effective Date (or, in the case of Claims lawfully filed after the Effective Date, by not later than one hundred and eighty (180) days after the date of filing of such Claims).

**B.      Reserves, Payments, And Distributions With Respect To Disputed Claims.**

At such time as a Disputed Claim becomes an Allowed Claim, in whole or in part, the District or its agent shall distribute to the holder thereof the distributions, if any, to which such holder is then entitled under this Plan.  Such distributions, if any, shall be made as soon as practicable after the date that the order or judgment of the Bankruptcy Court allowing such Disputed Claim becomes a Final Order (or such other date as the Claim becomes an Allowed Claim), but in no event more than thirty (30) days thereafter.  Unless otherwise specifically provided in this Plan or Allowed by order of the Bankruptcy Court, no interest shall be paid on Disputed Claims that later become Allowed Claims.

**X.      EFFECT OF CONFIRMATION**

**A.      Discharge Of The District.**

Pursuant to section 944 of the Bankruptcy Code, upon the Effective Date, the District shall be discharged from all debts (as defined in the Bankruptcy Code) of the District and Claims

-23-

533946v2

1  against the District other than (a) any debt specifically and expressly excepted from discharge by this

2  Plan or the Confirmation Order, or (b) any debt owed to an entity that, before the confirmation of

3  this Plan, had neither notice nor actual knowledge of the Chapter 9 Case.

4         The rights afforded in this Plan and the treatment of all Holders of Claims, be the

5  Claims Impaired or Unimpaired under this Plan, shall be in exchange for and in complete

6  satisfaction, discharge and release of all Claims of any nature whatsoever arising on or before the

7  Effective Date, known or unknown, including any interest accrued or expenses incurred thereon

8  from and after the Petition Date, whether against the District or any of its properties, assets or

9  interests in property. Except as otherwise provided herein, upon the Effective Date, all Claims

10  against the District shall be and shall be deemed to be satisfied, discharged and released in full, be

11  they Impaired or Unimpaired under this Plan.

12  **B.    Injunction.**

13         Except as otherwise expressly provided in this Plan, all entities who have held, hold

14  or may hold pre-Effective Date Claims shall be permanently enjoined from and after the Effective

15  Date, from: (a) commencing or continuing in any manner any action or other proceeding of any kind

16  with respect to any such pre-Effective Date Claim against the District or its property; (b) enforcing,

17  attaching, collecting, or recovering by any manner or means any judgment, award, decree or order

18  against the District or its property with respect to such pre-Effective Date Claims; (c) creating,

19  perfecting, or enforcing any lien or encumbrance of any kind against the District or its property; and

20  (d) asserting any right of setoff, subrogation or recoupment of any kind against any obligation due to

21  the District with respect to any such pre-Effective Date Claim, except as otherwise permitted by

22  section 553 of the Bankruptcy Code.

23  **C.    Term Of Existing Injunctions Or Stays.**

24         Unless otherwise provided, all injunctions or stays provided for in the Chapter 9 Case

25  pursuant to sections 105, 362, or 922 of the Bankruptcy Code, or otherwise, and in existence on the

26  Confirmation Date, shall remain in full force and effect until the Effective Date.

27

28

-24-

533946v2

## XI.    RETENTION OF JURISDICTION

Following the Effective Date, the Bankruptcy Court shall retain and have exclusive jurisdiction over any matter (x) arising under the Bankruptcy Code and relating to the District, (y) arising in or related to the Chapter 9 Case or this Plan or the Plan Documents, and (z) otherwise for the following:

1.    to resolve any objection duly and timely filed by either PHH or the Committee under sections 1.2.4.2 or 1.2.4.3 of the ASA to the District's intent to pay a given Claim or Claims that appears on the list of Covered Claim from the PHH Administrative Claims Fund or that would make the aggregate amount of Covered Claims paid in excess of the PHH Administrative Claims Fund;

2.    to resolve any matters related to the assumption, assumption and assignment, or rejection of any executory contract or unexpired lease to which the District is a party or with respect to which the District may be liable, and to hear, determine and, if necessary, liquidate, any Claims arising therefrom, including those matters related to the amendment after the Effective Date of this Plan, and to add any executory contracts or unexpired leases to the Rejection Motion, as necessary;

3.    to enter such orders as may be necessary or appropriate to implement or consummate the provisions of this Plan, the Plan Documents, and all other contracts, instruments, releases, and other agreements or documents related to this Plan;

4.    to determine any and all motions, adversary proceeding, applications and contested or litigated matters that may be pending on the Effective Date or that, pursuant to this Plan, may be instituted by the District after the Effective Date or that are instituted by any holder of a Claim before or after the Effective Date concerning any matter based upon, arising out of, or relating to the Chapter 9 Case, whether or not such action initially is filed in the Bankruptcy Court or any other court;

5.    to ensure that distributions to holders of Allowed Claims are accomplished as provided herein;

-25-

533946v2

6.      to hear and determine any objections to Claims or to proofs of Claim filed, both before and after the Effective Date, including any objections to the classification of any Claim, and to allow, disallow, determine, liquidate, classify, estimate or establish the priority of or secured or unsecured status of any Claim, in whole or in part;

7.      to enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, reversed or vacated;

8.      to issue such orders in aid of execution of this Plan, to the extent authorized by section 1142(b) of the Bankruptcy Code;

9.      to consider any modifications of this Plan, to cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including the Confirmation Order;

10.      to hear and determine all applications for awards of compensation for services rendered and reimbursement of expenses incurred prior to the Effective Date;

11.      to hear and determine all disputes or controversies arising in connection with or relating to this Plan or the Confirmation Order or the interpretation, implementation, or enforcement of this Plan or the Confirmation Order or the extent of any entity's obligations incurred in connection with or released under this Plan or the Confirmation Order;

12.      to issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any entity with consummation or enforcement of this Plan;

13.      to determine any other matters that may arise in connection with or are related to this Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release or other agreement or document related to this Plan or the Disclosure Statement (including the Plan Documents);

14.      to hear any other matter or for any purpose specified in the Confirmation Order that is not inconsistent with the Bankruptcy Code;

15.      to hear and determine any Rights of Action retained by the District under the ASA;

-26-

533946v2

1        16.    to hear and determine any motion made by the Indenture Trustee under

2 paragraph 8 of the Select Stipulation utilizing the standards set forth therein; and

3        17.    to enter a final decree closing the Chapter 9 Case.

4 **XII.**    **CONDITIONS PRECEDENT**

5     **A.**    **Condition Precedent To Confirmation.**

6     The entry of the Confirmation Order in form and substance satisfactory to the District

7 and PHH shall be a condition precedent to confirmation of this Plan.

8     **B.**    **Conditions Precedent To Effective Date.**

9     The "effective date of the plan," as used in section 1129 of the Bankruptcy Code,

10 shall not occur, and this Plan shall be of no force and effect, until the Effective Date. The

11 occurrence of the Effective Date is subject to the satisfaction (or waiver as set forth in Section XII.C)

12 of the following conditions precedent:

13     1.    **Confirmation Order.** The Confirmation Order shall have been

14 entered.

15     2.    **Plan Documents.** All agreements and instruments contemplated by,

16 or to be entered into pursuant to, this Plan shall be in form and substance acceptable to the District

17 and PHH and shall have been duly and validly executed and delivered, or deemed executed by the

18 parties thereto, and all conditions to their effectiveness shall have been satisfied or waived.

19     3.    **Sale Closing.** The occurrence of the Sale Closing Date with respect to

20 the Two Hospitals Transaction.

21     4.    **Satisfaction of Class 1A and 1B Claims.** The payments

22 contemplated under Sections IV.A.2 and IV.B.2 of this Plan are made on the Sale Closing Date;

23 provided, however, that such condition may be waived in writing by the Indenture Trustee.

24     5.    **Timing.** The Effective Date shall occur on the first day after which

25 the conditions set forth in Section XII.B are satisfied or waived; *provided* that, unless otherwise

26 ordered by the Bankruptcy Court, the Effective Date must occur by no later than one year after the

27 Confirmation Date.

28

-27-

533946v2

**C.      Waiver Of Conditions To Effective Date.**

The District or PHH may waive in whole or in part condition 2 to effectiveness of this Plan. Any such waiver of a condition may be effected at any time, without notice or leave or order of the Bankruptcy Court and without any formal action, other than the filing of a notice of such waiver with the Bankruptcy Court.

**D.      Effect Of Failure Of Conditions.**

In the event that the conditions to effectiveness of this Plan have not been timely satisfied or waived, and upon notification submitted by the District to the Bankruptcy Court (a) the Confirmation Order shall be vacated, (b) no distributions under this Plan shall be made, (c) the District and all holders of Claims shall be restored to the *status quo* as of the day immediately preceding the Confirmation Date as though the Confirmation Date never occurred, and (d) all of the District's obligations with respect to the Claims shall remain unchanged and nothing contained herein shall be deemed to constitute a waiver or release of any claims by or against the District or any other entity or to prejudice in any manner the rights of the District or any entity in any further proceedings involving the District.

**XIII.   MISCELLANEOUS PROVISIONS**

**A.      Dissolution Of The Committee.**

On the Effective Date, the Committee shall be released and discharged of and from all further authority, duties, responsibilities and obligations relating to and arising from and in connection with the Chapter 9 Case and the Committee shall be deemed dissolved and its appointment terminated. The professionals retained by the Committee and the members thereof shall not be entitled to compensation or reimbursement of expenses for any services rendered or expenses incurred after the Effective Date, except for services rendered and expenses incurred in connection with any applications by such professionals or committee members for allowance of Professional Claims timely filed after the Effective Date as provided in this Plan.

**B.      Severability.**

If, prior to the Confirmation Date, any term or provisions of this Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court, with the consent of the

-28-

533946v2

1   District, shall have the power to alter and interpret such term or provision to make it valid or

2   enforceable to the maximum extent practicable, consistent with the original purpose of the term or

3   provision held to be invalid, void or unenforceable, and such term or provision shall then be

4   applicable as altered or interpreted.  Notwithstanding any such holding, alteration or interpretation,

5   the remainder of the terms and provisions of this Plan shall remain in full force and effect and shall

6   in no way be affected, impaired or invalidated by such holding, alteration or interpretation.  The

7   Confirmation Order shall constitute a judicial determination and shall provide that each term and

8   provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is

9   valid and enforceable pursuant to its terms.

10          C.      Governing Law.

11                  Except to the extent that the Bankruptcy Code or other federal law is applicable, or to

12  the extent that an Exhibit hereto or Plan Document provides otherwise, the rights, duties and

13  obligations arising under this Plan shall be governed by, and construed and enforced in accordance

14  with, the laws of the State of California, without giving effect to principles of conflicts of laws.

15          D.      Effectuating Documents And Further Transactions.

16                  Each of the officials and employees of the District is authorized to execute, deliver,

17  file, or record such contracts, instruments, releases, indentures, and other agreements or documents

18  and take such actions as may be necessary or appropriate to effectuate and further evidence the terms

19  and provisions of this Plan.

20          E.      Notice Of Effective Date.

21                  On or before ten (10) days after occurrence of the Effective Date, the District or its

22  agent shall mail or cause to be mailed to all holders of Claims a Notice that informs such holders of:

23  (a) entry of the Confirmation Order; (b) the occurrence of the Effective Date; (c) the assumption and

24  rejection of the District's executory contracts and unexpired leases pursuant to this Plan, as well as

25  the deadline for the filing of Claims arising from such rejection; (d) the deadline established under

26  this Plan for the filing of Administrative Claims; (e) the procedures for changing an address of

27  record pursuant to Section VII.B; and (f) such other matters as the District deems to be appropriate.

28

-29-

533946v2

1    DATED:  December 16, 2009          VALLEY HEALTH SYSTEM

2

3                                          By:      /s/ Joel M. Bergenfeld

4                                               Joel M. Bergenfeld,
                                              Chief Executive Officer

5    Submitted By:

6    STUTMAN, TREISTER & GLATT

7    PROFESSIONAL CORPORATION
      Reorganization Counsel for the District

8

      By:      /s/ Neeta Menon

9           Charles D. Axelrod
          Gary E. Klausner

10          H. Alexander Fisch

11          Neeta Menon

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

533946v2